In the Matter of THE APPLICATION OF THE UNITED STATES of America for AN ORDER AUTHORIZING THE INSTALLATION AND USE OF A PEN REGISTER AND TRAP AND TRACE DEVICE.

C.A. No. C–12–534M.

United States District Court,
S.D. Texas,
Corpus Christi Division.

June 2, 2012.

---

## OPINION DENYING THE APPLICA-TION FOR A PEN REGISTER AND TRAP AND TRACE DEVICE

BRIAN L. OWSLEY, United States Magistrate Judge.

This matter comes before the Court pursuant to a written and sworn application pursuant to 18 U.S.C. §§ 3122(a)(1), 3127(5), and 2703(c)(1) by an Assistant United States Attorney who is an attorney for the government as defined by Rule 1(b)(1)(B) of the Federal Rules of Criminal Procedure and an accompanying affidavit of a special agent with the United States Drug Enforcement Agency.

## BACKGROUND

In the application, the Assistant United States Attorney "certifies that the Drug Enforcement Administration (DEA) is conducting an ongoing criminal investigation regarding violations of federal criminal statutes." Specifically, the investigation focuses on a Subject alleged to be engaged in narcotics trafficking. The application details the investigation spanning several years of the Subject's alleged involvement and notes that at one point the Subject's cell phone number was known, but that the Subject apparently is no longer using that cell phone. Based on information provided by individuals cooperating with the investigation, it is believed that the Subject is using a new cellular telephone.

In the pending application, the Assistant United States Attorney "requests the Court issue an order authorizing the installation and use of a pen register and trap and trace device for a period of sixty (60) days to detect radio signals emitted from wireless cellular telephones in the vicinity of the [Subject] that identify the telephones (e.g., by transmitting the telephone's serial number and phone number) to the network for authentication." The applicant further explains that "[b]y determining the identifying registration data at various locations in which the [Subject's] Telephone is reasonably believed to be operating, the telephone number corresponding to the [Subject's] Telephone can be identified."

After reviewing the application, an *ex parte* hearing was conducted with the special agent leading the investigation. He indicated that this equipment designed to capture these cell phone numbers was known as a "stingray." Moreover, the As-

sistant United States Attorney explained that the application was based on a standard application model and proposed order approved by the United States Department of Justice. During this hearing, a number of the decisions addressed below were discussed with the Assistant United States Attorney. He was not familiar with these cases, but indicated that he would be able to provide case law to support this application the next day.[1]

The application has a number of shortcomings. It does not explain the technology, or the process by which the technology will be used to engage in the electronic surveillance to gather the Subject's cell phone number. For example, there was no discussion as to how many distinct surveillance sites they intend to use, or how long they intend to operate the stingray equipment to gather all telephone numbers in the immediate area. It was not explained how close they intend to be to the Subject before using the stingray equipment. They did not address what the government would do with the cell phone numbers and other information concerning seemingly innocent cell phone users whose information was recorded by the equipment.

While these various issues were discussed at the hearing, the government did not have specific answers to these questions. Moreover, neither the special agent nor the Assistant United States Attorney appeared to understand the technology very well. At a minimum, they seemed to have some discomfort in trying to explain it.

## ANALYSIS

Historically, a pen register was viewed as a device recording the outgoing numbers dialed from a specific telephone number. *United States v. Giordano,* 416 U.S. 505, 512 n. 2, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (noting that a pen register is "a device that records telephone numbers dialed from a *particular phone*") (emphasis added); *United States v. New York Telephone Co.,* 434 U.S. 159, 161 n. 1, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977) ("A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. It does not overhear oral communications and does not indicate whether calls are actually completed.").

In 2001, Congress amended the definition of the term "pen register" as part of the USA PATRIOT Act. *See In re Application of the United States for an Order for Prospective Cell Site Location Information on a Certain Cellular Telephone,* 460 F.Supp.2d 448, 455 (S.D.N.Y.2006). In that statute, Congress redefined a "pen register" as

a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication, but such term does not include any device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider or any device or process used by a provider or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of its business.

18 U.S.C. § 3127(3); *accord In re United States,* 622 F.Supp.2d 411, 414 (S.D.Tex.

2007). Additionally, a trap and trace device is defined as

> a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, provided, however, that such information shall not include the contents of any communication.

18 U.S.C. § 3127(4); *accord In re United States*, 622 F.Supp.2d at 414. Congress further mandated the information that a court needs to grant such an application based on what is required to be in the court order authorizing the pen register and trap and trace device

> (b) Contents of order—an order issued under this section—
> (1) shall specify—
> (A) the identity, if known, of the person to whom is leased or in whose name is listed the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied;
> (B) the identity, if known, of the person who is the subject of the criminal investigation;
> (C) the attributes of the communications to which the order applies, *including the number or other identifier* and, if known, the location of the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied, . . . .

18 U.S.C. § 3123(b)(1) (emphasis added).

With the PATRIOT Act, the definition of a pen register was broadened. *In re Application of the United States for an Order for Prospective Cell Site Location Information on a Certain Cellular Telephone*, 460 F.Supp.2d at 455. Nonethe-

less, courts still have determined that pen register applications seek information about a particular telephone. *See, e.g., United States v. Jadlowe*, 628 F.3d 1, 6 n. 4 (1st Cir.2010) ("A 'pen register' is a device used, inter alia, to record the dialing and other information transmitted by a targeted phone."); *In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F.Supp.2d 747, 752 (S.D.Tex.2005) ("A 'pen register' is a device that records the numbers dialed for outgoing calls made from the target phone."); *In re Application of the United States for an Order Authorizing the Installation and Use of a Pen Register and a Caller Identification System on Telephone Numbers*, 402 F.Supp.2d 597, 602 (D.Md.2005) ("pen register records telephone numbers dialed for outgoing calls from the target phone"); *In re Application of the United States for an Order for Disclosure of Telecommunications Records and Authorizing the Use of a Pen Register and Trap and Trace*, 405 F.Supp.2d 435, 438 (S.D.N.Y.2005) ("Pen Register Statute is the statute used to obtain information on an ongoing or prospective basis regarding outgoing calls from a particular telephone"); *In the Matter of Applications of the United States of America for Orders (1) Authorizing the Use of Pen Registers and Trap and Trace Devices and (2) Authorizing Release of Subscriber Information*, 515 F.Supp.2d 325, 328 (E.D.N.Y.2007) ("In layman's terms, a pen register is a device capable of recording all digits dialed from a particular phone."); *United States v. Bermudez*, No. 05–43–CR, 2006 WL 3197181, at *8 (S.D.Ind. June 30, 2006) (unpublished) ("A 'pen register' records telephone numbers dialed for outgoing calls made from the target phone."). Similarly, a trap and trace device after the Patriot Act still seeks information about a particular phone. *See, e.g., In re Application of the United States for an Order Authorizing*

*the Installation and Use of a Pen Register and a Caller Identification System on Telephone Numbers,* 402 F.Supp.2d at 602 ("trap/trace device ... records the telephone numbers of those calling the target phone"); *In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority,* 396 F.Supp.2d at 752 ("A trap and trace device captures the numbers of calls made to the target phone."); *Bermudez,* 2006 WL 3197181, at *8 ("a trap/trace device records the telephone numbers of those calling the target phone").

This approach is consistent with the current version of § 3123. Thus, a court is required to list in any order the identity of the person who is the cell phone subscriber, but only if that identity is known. *See* 18 U.S.C. § 3123(b)(1)(A). Additionally, the court is also required to include the name of the criminal investigation's subject, but again only if that identity is known. *See* 18 U.S.C. § 3123(b)(1)(B). However, regarding the telephone number or other such identifier, Congress mandated explicitly that information be included within the court order. *See* 18 U.S.C. § 3123(b)(1)(C).[2] The Patriot Act's revised definition of a pen register and trap and trace device in § 3127 simply amplifies the various types of information that are available such as routing and signaling information. *See Jadlowe,* 628 F.3d at 6 n. 4; *In re Application of the United States for an Order for Disclosure of Telecommunications Records and Authorizing the Use of a Pen Register and Trap and Trace,* 405 F.Supp.2d at 438–39; *see also In re Application of the United States for an Order for Prospective Cell Site Location Information on a Certain Cellular Telephone,* 460 F.Supp.2d at 454 (noting that pen registers and trap and trace de-

vices apply to particular cell phones and provide additional information such as cell site information); *In re Application of the United States for an Order Authorizing the Installation and Use of a Pen Register Device,* 497 F.Supp.2d 301, 306 (D.P.R. 2007) ("the term 'signaling information' under 18 U.S.C. § 3127(3) and (4) encompasses cell site information").

■ The language of § 3123(b)(1) is straightforward in that a telephone number or similar identifier is necessary for a pen register. The Supreme Court has explained that "in all statutory construction cases, we begin with 'the language itself [and] the specific context in which that language is used.'" *McNeill v. United States,* —— U.S. ——, 131 S.Ct. 2218, 2221, 180 L.Ed.2d 35 (2011) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). Moreover, courts are to "look first to the word's ordinary meaning" when interpreting a statute. *Schindler Elevator Corp. v. United States ex rel. Kirk,* —— U.S. ——, 131 S.Ct. 1885, 1891, 179 L.Ed.2d 825 (2011) (citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 175, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)); *accord Wall v. Kholi,* —— U.S. ——, 131 S.Ct. 1278, 179 L.Ed.2d 252 (2011) (citing *Williams v. Taylor,* 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000)). Here, the plain language of the statute mandates that this Court have a telephone number or some similar identifier before issuing an order authorizing a pen register. The government has not provided any support to the contrary that the pen register statute should be interpreted in this manner.

The special agent leading the investigation referred to the equipment that the government proposes to use as a stingray. Other names for this equipment include

---

**2.** These specific identifiers include, *inter alia,* the Electronic Serial Number, the International Mobile Equipment Identity, the Mobile Equipment Identifier, or the Urban Fleet Mobile Identifier, which are addressed in both the application and the proposed order.

triggerfish, cell site simulator, and digital analyzer. Regardless of what it is called, there is scant case law addressing the equipment.

In a decision issued prior to the Patriot Act, one court defined a "digital analyzer" as "a portable device that can detect signals emitted by a cellular telephone ... [including] the electronic serial number ("ESN") assigned to a particular cellular telephone, the telephone of the cellular telephone itself, and the telephone numbers called by the cellular telephone." *In the Matter of the Application of the United States of America for an Order Authorizing the Use of a Cellular Telephone Digital Analyzer*, 885 F.Supp. 197, 198 (C.D.Cal.1995); *see also In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F.Supp.2d 747, 755 (S.D.Tex.2005) (defining a triggerfish as equipment that "enables law enforcement to gather cell site data directly, without the assistance of the service provider").

█ In *United States v. Rigmaiden*, 844 F.Supp.2d 982 (D.Ariz.2012), the defendant was a fugitive who was charged with identity theft and mail and wire fraud. *Id.* at 987–88. "The government located and arrested Defendant, in part, by tracking the location of an aircard connected to a laptop computer that allegedly was used to perpetuate the fraudulent scheme." *Id.* The defendant was seeking extensive discovery based on his allegations "that the technology and methods used to locate the aircard violated his Fourth Amendment rights." *Id.* In that investigation, the law enforcement officers had both a pen register and trap and trace device as well as a warrant pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a mobile tracking device. That court found that "[t]he mobile tracking device used by the FBI to locate the aircard functions as a cell site simulator. The mobile tracking device

mimicked a Verizon Wireless cell tower and sent signals to, and received signals from, the aircard." *Id.* at 995; *see also* 18 U.S.C. § 3117 (addressing mobile tracking devices). Moreover, that "mobile tracking device used to simulate a Verizon cell tower is physically separate from the pen register trap and trace device used to collect information from Verizon." *Rigmaiden*, 844 F.Supp.2d at 995. Finally, the government asserted that "for purposes of Defendant's motion to suppress, ... the Court may assume that the aircard tracking operation was a Fourth Amendment search and seizure." *Id.*

Thus, *Rigmaiden* provides several salient points for the analysis here. The use of what was termed a cell site simulator was deemed a mobile tracking device. The government indicated that this cell site simulator was authorized pursuant to the warrant for the mobile tracking device as opposed to any pen register and trap and trace device. Finally, in that case, the government acknowledged that the proper analysis had to be pursuant to Fourth Amendment search and seizure jurisprudence.

Here, the application seeks an order authorizing the use of this equipment as a pen register as opposed to seeking a warrant. The government has not provided any support that the pen register statute applies to stingray equipment. Based on the statutory language and the limited case law analyzing this issue, a pen register does not apply to this type of electronic surveillance.

## CONCLUSION

Accordingly, the government's application for a pen register and trap and trace device is hereby denied without prejudice.