**In the Matter of the Application of the UNITED STATES of America for an ORDER PURSUANT TO 18 U.S.C. § 2703(D) Directing Providers to Provide Historical Cell Site Locations Records.**

**C.R. Nos. C–12–670M, C–12–671M, C–12–672M, C–12–673M.**

United States District Court,
S.D. Texas,
Corpus Christi Division.

Sept. 26, 2012.

---

### ORDER DENYING THE GOVERN-MENT'S REQUESTS FOR CELL TOWER DUMPS

BRIAN L. OWSLEY, United States Magistrate Judge.

These four matters come before the Court pursuant to a written and sworn application pursuant to 18 U.S.C. § 2703(d) by an assistant United States Attorney who is an attorney for the Government as defined by Rule 1(b)(1)(B) of the Federal Rules of Criminal Procedure. Specifically, these four applications seek an Order directing that all historical cell site records from four separate telecommunications providers for specific towers be disclosed to the Government. Each application is the same except for seeking data from different providers regarding different cell towers.

### BACKGROUND

In an *ex parte* hearing on July 3, 2012, the assistant United States Attorney acknowledged that the Government was seeking a cell tower dump in each of the four applications. Specifically, he sought all telephone numbers and all other subscriber information for the hour before and the hour after the crime being investigated. The victim of the crime had a cell phone that was taken by the subject of the investigation when he left the crime scene. Moreover, it is believed that the subject of the investigation also has a cell phone.

When discussing the technology with the assistant United States Attorney, it became apparent that he did not understand it well. Similarly, the special agent present at the hearing had difficulties discussing or explaining the technology to be used.

The Government's attorney also explained that there was a special agent in Dallas who serves as a Government expert regarding these matters. This expert would review all of the data obtained and provide guidance as to what direction the investigation of the subject should take. Specifically, after analyzing the raw data, he would determine a number of cell phones to target in the investigation. The data obtained would not only show all of the cell phones that were in the vicinity of the crime scene, but likely would demonstrate the direction the calls were hitting the cell tower, which in turn would enable the Government to triangulate the path of the cell phone's journey. The assistant United States Attorney could not explain much more about the expert, his role, or his insights into the electronic surveillance. However, he did acknowledge that there

would in all likelihood be a substantial amount of data produced pursuant to the requested court order.

## ANALYSIS

The Government relies on § 2703 in its request for approval of its cell tower dump requests. That statute does not address cell tower dumps. Instead, pursuant to § 2703, Congress has authorized the Government to obtain customer records from telecommunications providers

A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity—

(A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction;

(B) obtains a court order for such disclosure under subsection (d) of this section;

(C) has the consent of the subscriber or customer to such disclosure;

(D) submits a formal written request relevant to a law enforcement investigation concerning telemarketing fraud for the name, address, and place of business of a subscriber or customer of such provider, which subscriber or customer is engaged in telemarketing . . . ; or

(E) seeks information under paragraph (2).

18 U.S.C. § 2703(c)(1). The subscriber or customer information may include the person's name, address; telephone call records, including times and durations; lengths and types of services; subscriber number or identity; and means and source of payment. 18 U.S.C. § 2703(c)(2). Ob-

taining a court order, is simply a matter of a law enforcement officer providing the court with *"specific and articulable facts* showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are *relevant and material to an ongoing criminal information."* 18 U.S.C. § 2703(d) (emphases added).

Regarding the "specific and articulable facts" standard, some courts have rejected arguments that probable cause and the Fourth Amendment must be applied to requests for historical cell site data. *See United States v. Graham,* 846 F.Supp.2d 384, 402–03 (D.Md.2012); *United States v. Benford,* No. 2:09CR86, 2010 WL 1266507, at *2–3 (N.D.Ind. Mar. 26, 2010) (unpublished); *see also In re Applications of United States for Orders Pursuant To Title 18, U.S.Code Section 2703(d),* 509 F.Supp.2d 76, 80–81 (D.Mass.2007) (reversing *Applications of United States for Orders Pursuant To Title 18, U.S.Code Section 2703(d) to Disclose Subscriber Information and Historical Cell Site Information,* 509 F.Supp.2d 64 (D.Mass.2007) in which a magistrate judge held that probable cause was required for the disclosure of historical cell site information). Other courts have determined that probable cause is necessary for such information. *See In the Application of the United States for an Order Authorizing The Release of Historical Cell–Site Information,* 809 F.Supp.2d 113, 118–20 (E.D.N.Y.2011); *In the Application of the United States for Historical Cell Site Data,* 747 F.Supp.2d 827, 837–40 (S.D.Tex.2010); *In re Application of United States for an Order Authorizing the Release of Historical Cell–Site Information,* 736 F.Supp.2d 578, 579 (E.D.N.Y.2010); *In the Application of the United States of America For and [sic] Order: (1) Authorizing the Use of a Pen Register and Trap and Trace Device; (2)*

*Authorizing Release of Subscriber and Other Information; and (3) Authorizing the Disclosure of Location–Based Services,* 727 F.Supp.2d 571, 583–84 (W.D.Tex.2010); *In re Application of United States for an Order Pursuant to 18 U.S.C. § 2703(d),* Nos. C–12–755M, C–12–756M, C–12–757M, 2012 WL 3260215, at *2 (S.D.Tex. July 30, 2012) (unpublished). In discussing the appropriate standard, the Eastern District of New York explained that a request for cell site information raises a greater concern than a request for a tracking device on a vehicle

> The cell-site-location records at issue here currently enable the tracking of the vast majority of Americans. Thus, the collection of cell-site-location records effectively enables "mass" or "wholesale" electronic surveillance, and raises greater Fourth Amendment concerns than a single electronically surveilled car trip. This further supports the court's conclusion that cell-phone users maintain a reasonable expectation of privacy in long-term cell-site-location records and that the Government's obtaining these records constitutes a Fourth Amendment search.

*In the Application of the United States for an Order Authorizing The Release of Historical Cell–Site Information,* 809 F.Supp.2d at 119–20. Similarly, the Western District of Texas has explained that it "will insist on strict adherence to the requirements of Rule 41 on all requests for CSLI, including requests for historical data. The warrants will be granted only on a showing of probable cause. . . ." *In the Application of the United States of America For and [sic] Order: (1) Authorizing the Use of a Pen Register and Trap and Trace Device; (2) Authorizing Release of Subscriber and Other Information; and (3) Authorizing the Disclosure of Location–Based Services,* 727 F.Supp.2d at 583–84.

■ This Court has concluded that given refinements in location technology regarding cell site information that access to such data enables that person to plot with great precision where the cell phone user has been during a given time period. *In the Application of the United States for Historical Cell Site Data,* 747 F.Supp.2d at 835–37. Consequently, cell site data are protected pursuant to the Fourth Amendment from warrantless searches. *Id.* at 838–40. Thus, the Government could obtain the cell site data only by establishing probable cause pursuant to Rule 41 of the Federal Rules of Criminal Procedure. On appeal pursuant to 28 U.S.C. § 636, the Court overruled the Government's objections explaining that "[w]hen the government requests records from cellular services, data disclosing the location of the telephone at the time of particular calls may be acquired only by a warrant issued on probable cause." *In the Applications of the United States for Historical Cell Site Data,* Misc. No. H–11–223 (S.D.Tex. Nov. 11, 2011) (Order on Objections) (unpublished) (citing U.S. Const. amend. 4). Moreover, because the requested "records would show the date, time, called number, and location of when the call was made," this information was "constitutionally protected from this intrusion." *Id.* Finally, the Court determined that "[t]he standard under the Stored Communications Act, 18 U.S.C. § 2703(d), is below that required by the Constitution." *Id.*

■ Here, the assistant United States Attorney simply relied on an application based on "specific and articulable facts" standard. He has not submitted an affidavit pursuant to Rule 41 of the Federal Rules of Criminal Procedure demonstrating probable cause supporting the request for the records. This Court has concluded that such requests must be made based on the probable cause standard.

Moreover, it is problematic that neither the assistant United States Attorney nor the special agent truly understood the technology involved in the requested applications. *See In re the Application of the U.S. for an Order Authorizing the Installation and Use of a Pen Register and Trap and Trace Device,* 890 F.Supp.2d 747, 749–50 (S.D.Tex.2012). Without such an understanding, they cannot appreciate the constitutional implications of their requests. They are essentially asking for a warrant in support of a very broad and invasive search affecting likely hundreds of individuals in violation of the Fourth Amendment. The Constitution mandates that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It further provides that "no Warrants shall issue, but upon probable cause." *Id.; see also* Fed.R.Crim.P. 41 (addressing the issuance of warrants). There is nothing from the Government in its four applications to support the position that the "specific and articulable facts" standard and § 2703(d) apply to cell tower dumps.

Finally, there is no discussion about what the Government intends to do with all of the data related to innocent people who are not the target of the criminal investigation. In one criminal investigation, the Government received the names, cell phone numbers, and subscriber information of 179 innocent individuals. *See United States v. Soto,* No. 3:09CR200 (D.Conn. May 18, 2010) (Memorandum in Support of Motion to Suppress). Although the use of a court-sanctioned cell tower dump invariably leads to such information being provided to the Government, in order to receive such data, the Government at a minimum should have a protocol to address how to handle this sensitive private information. Although this issue was raised at the hearing, the Government has not addressed it to date. This failure to address the privacy rights for the Fourth Amendment concerns of these innocent subscribers whose information will be compromised as a request of the cell tower dump is another factor warranting the denial of the application.

## CONCLUSION

Accordingly, the Government's four applications pursuant to 18 U.S.C. § 2703(d) requesting historical cell site data are denied without prejudice.