In the Matters of the SEARCH OF CELLULAR TELEPHONE TOWERS.

C.R. Nos. C–13–523M, C–13–525M, C–13–526M, C–13–527M, C–13–528M.

United States District Court, S.D. Texas, Corpus Christi Division.

May 8, 2013.

## ORDER GRANTING THE GOVERNMENT'S REQUESTS FOR CELL TOWER DUMPS PURSUANT TO SEARCH WARRANTS

RIAN L. OWSLEY, United States Magistrate Judge.

These five matters come before the Court pursuant to an application and an affidavit sworn to by a federal agent pursuant to Rule 41 of the Federal Rules of Criminal Procedure. Specifically, each application seeks an Order directing that all historical cell site records from five separate telecommunications providers for specific towers near the crime scene be disclosed to the Government.

### BACKGROUND

In an *ex parte* hearing on April 30, 2013, the Assistant United States Attorney acknowledged that the Government was seeking a cell tower dump in this application. Specifically, he sought all telephone numbers within a four-minute time span during the time of the criminal activity being investigated. In addition to the telephone numbers, he requested any other unique identifiers such as Electronic Serial

Number ("ESN"), Mobile Electronic Identity Number ("MEIN"), Mobile Identification Number ("MIN"), Subscriber Identity Module ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifier ("IMSI"), and International Module Equipment Identity ("IMEI"). Finally, he sought the duration of each call, the telephone number that each cell phone number near the cell tower called, and the sectors that received the radio signal.

The Assistant United States Attorney further alleged that the subject of the investigation was witnessed using the cell phone during the commission of the offense. Based on evidence the telephone conversation was only about thirty seconds in duration. The five-minute time span is tailored to minimize the number of telephone numbers that each telecommunication company will have to provide to the Government.

During the hearing, the Assistant United States Attorney explained that they were seeking records from the five providers because they represent most of the share of cell phone users and thus coverage. Within a four-mile radius of the crime location, he believes that there are 77 towers. Although the Government may receive hundreds, or even thousands, of telephone numbers for that time period, the expectation is that the narrow criteria that they have developed will limit the relevant numbers to only about fifteen to twenty individuals who will then get further scrutiny.

Originally, the Government sought these cell tower records pursuant to 18 U.S.C. § 2703(d). That application was denied. *See In the Matter of the Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2703(d)*, C.R. No. C–13–479M, 930 F.Supp.2d 698, 2012 WL 4717778 (S.D.Tex.2012). The Government resubmitted this request pursuant to a warrant consistent with Rule 41 of the Federal Rules of Criminal Procedure. The affidavit by the special agent in support of the application reiterates the facts first raised in the § 2703(d) application and links the requested search of the tower phone records to the criminal activity being investigated. Moreover, the second application addresses concerns about the privacy rights of third-party individuals whose information would be provided to the Government by the cellular providers.

## ANALYSIS

The Government's initial reliance on § 2703(d) was misplaced because that statute does not address cell tower dumps. *In the Matter of the Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 930 F.Supp.2d 698, 699–700, 2012 WL 4717778, at *1 (S.D.Tex.2012). In applying for a search warrant, the Government seeks to address some of the concerns previously raised regarding cell tower dumps. *See generally id.* at 700–02, 2012 WL 4717778 at *2–4.

Any order authorizing a cell tower dump is likely to affect at least hundreds of individuals' privacy interests. The Constitution mandates that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It further provides that "no Warrants shall issue, but upon probable cause." *Id.* Rule 41 of the Federal Rules of Criminal Procedure addresses the issuance of warrants:

At the request of a federal law enforcement officer ... a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when

the warrant is issued but might move or be moved outside the district before the warrant is executed.

Fed.R.Crim.P. 41(b)(2).

■ A review of a warrant is designed to determine whether the totality of the circumstances establish probable cause. *United States v. Settegast,* 755 F.2d 1117, 1121 (5th Cir.1985) (discussing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). As the Fifth Circuit explained "[t]he affidavit supporting an application for a search warrant must provide the magistrate 'sufficient information ... to allow the official to determine probable cause.'" *Id.* (quoting *Illinois v. Gates,* 462 U.S. at 239, 103 S.Ct. 2317); *see also Kohler v. Englade,* 470 F.3d 1104, 1109 (5th Cir.2006) ("Probable cause exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime.") (citing *Illinois v. Gates,* 462 U.S. at 239, 103 S.Ct. 2317). The affidavit filed in support of the warrant "must make it apparent ... that there is some nexus between the items to be seized and the criminal activity being investigated." *Kohler,* 470 F.3d at 1109 (citing *Warden v. Hayden,* 387 U.S. 294, 302, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)).

■ Here, the Government has established probable cause as required by Rule 41. Based on the totality of the facts alleged in the special agent's affidavit, the Government demonstrated that the subject of the investigation used a cell phone during the criminal activity in furtherance of the offense. Consequently, there is a nexus between the telephone records sought and the criminal activity being investigated, especially in light of the narrow, specific date and time that are sought.

More importantly, the Government's application seeks to address the privacy rights of third-parties whose information will be provided to the Government. *See In the Matter of the Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d),* 930 F.Supp. 2d at 702, 2012 WL 4717778, at *4. Consequently, the Government is ordered to return any and all original records and copies, whether hardcopy or in electronic format or storage, to the Provider, which are determined to be not relevant to the Investigative Agency's investigation. Additionally, there will be delayed notification by the providers to subscribers that they have provided records to the Government pursuant to a court order in order to safeguard the Investigative Agency's investigation. However, the Providers are ordered to make the notification to any subscribers whose records are returned by the Investigative Agency because they were determined to be not relevant to the Investigative Agency's investigation within ten days of their return.

## CONCLUSION

Accordingly, each of the Government's five applications for warrants pursuant to Rule 41 of the Federal Rules of Criminal Procedure consistent with this Order are hereby granted.