**In the Matter of the APPLICATION OF the UNITED STATES of America FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(D).**

**C.R. No. C–13–497M.**

United States District Court,
S.D. Texas,
Corpus Christi Division.

May 8, 2013.

### ORDER DENYING THE GOVERNMENT'S REQUESTS FOR CELL TOWER RECORDS

BRIAN L. OWSLEY, United States Magistrate Judge.

This matter comes before the Court pursuant to a written and sworn application

pursuant to 18 U.S.C. § 2703(d) by an assistant United States Attorney who is an attorney for the Government as defined by Rule 1(b)(1)(B) of the Federal Rules of Criminal Procedure. Specifically, this application seeks an Order directing that all historical cell site records from five separate telecommunications providers for specific towers be disclosed to the Government.

## BACKGROUND

In an *ex parte* hearing on April 30, 2013, the Assistant United States Attorney acknowledged that the Government was seeking a cell tower dump in this application. Specifically, he seeks all telephone numbers within a five-minute time span during the time of the criminal activity being investigated. In addition to the telephone numbers, he requests any other unique identifiers such as Electronic Serial Number ("ESN"), Mobile Electronic Identity Number ("MEIN"), Mobile Identification Number ("MIN"), Subscriber Identity Module ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifier ("IMSI"), and International Module Equipment Identity ("IMEI"). Finally, he seeks duration of each call, the telephone number that each cell phone number near the cell tower called, and the sectors that received the radio signal.

The Assistant United States Attorney further alleges that the subject of the investigation was witnessed using the cell phone during the commission of the offense. Based on evidence the telephone conversation was only about thirty seconds in duration. The five-minute time span is tailored to minimize the number of telephone numbers that each telecommunication company will have to provide to the Government.

During the hearing, the Assistant United States Attorney explained that they were seeking records from the five providers because they represent most of the share of cell phone users and thus coverage. Within a four-mile radius of the crime location, he believes that there are 77 towers. Although the Government may receive hundreds, or even thousands, of telephone numbers for that time period, the expectation is that the narrow criteria that they have developed will limit the relevant numbers to only about fifteen to twenty individuals who will then get further scrutiny.

## ANALYSIS

The Government relies on § 2703 in its request for approval of its cell tower dump requests. That statute does not address cell tower dumps. *In the Matter of the Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 930 F.Supp.2d 698, 699–700, 2012 WL 4717778, at *1 (S.D.Tex.2012). Instead, pursuant to § 2703, Congress has authorized the Government to obtain customer records from telecommunications providers:

A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity—

(A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction;

(B) obtains a court order for such disclosure under subsection (d) of this section;

(C) has the consent of the subscriber or customer to such disclosure;

(D) submits a formal written request relevant to a law enforcement investigation concerning telemarketing fraud for the name, address, and place of business of a subscriber or customer of such provider, which subscriber or customer is engaged in telemarketing . . . ; or

(E) seeks information under paragraph (2).

18 U.S.C. § 2703(c)(1). The subscriber or customer information may include the person's name, address; telephone call records, including times and durations; lengths and types of services; subscriber number or identity; and means and source of payment. 18 U.S.C. § 2703(c)(2). Obtaining a court order, is simply a matter of a law enforcement officer providing the court with *"specific and articulable facts"* showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are *relevant and material to an ongoing criminal information."* 18 U.S.C. § 2703(d) (emphases added).

Regarding the "specific and articulable facts" standard, some courts have rejected arguments that probable cause and the Fourth Amendment must be applied to requests for historical cell site data. *See United States v. Graham,* 846 F.Supp.2d 384, 402–05 (D.Md.2012); *United States v. Benford,* No. 2:09CR86, 2010 WL 1266507, at *2–3 (N.D.Ind. Mar. 26, 2010) (unpublished); *see also In re Applications of United States for Orders Pursuant To Title 18, U.S.Code Section 2703(d),* 509 F.Supp.2d 76, 80–81 (D.Mass.2007) (reversing *Applications of United States for Orders Pursuant To Title 18, U.S.Code Section 2703(d) to Disclose Subscriber Information and Historical Cell Site Information,* 509 F.Supp.2d 64 (D.Mass.2007) in

which a magistrate judge held that probable cause was required for the disclosure of historical cell site information). Other courts have determined that probable cause is necessary for such information. *See In the Application of the United States for an Order Authorizing The Release of Historical Cell–Site Information,* 809 F.Supp.2d 113, 118–20 (E.D.N.Y.2011); *In the Application of the United States for Historical Cell Site Data,* 747 F.Supp.2d. 827, 837–40 (S.D.Tex.2010); *In re Application of United States for an Order Authorizing the Release of Historical Cell–Site Information,* 736 F.Supp.2d 578, 579 (E.D.N.Y.2010); *In the Application of the United States of America For and [sic] Order: (1) Authorizing the Use of a Pen Register and Trap and Trace Device; (2) Authorizing Release of Subscriber and Other Information; and (3) Authorizing the Disclosure of Location–Based Services,* 727 F.Supp.2d 571, 583–84 (W.D.Tex.2010); *In re Application of United States for an Order Pursuant to 18 U.S.C. § 2703(d),* Nos. C–12–755M, C–12–756M, C–12–757M, 2012 WL 3260215, at *2 (S.D.Tex. July 30, 2012) (unpublished). In discussing the appropriate standard, the Eastern District of New York explained that a request for cell site information raises a greater concern than a request for a tracking device on a vehicle:

The cell-site-location records at issue here currently enable the tracking of the vast majority of Americans. Thus, the collection of cell-site-location records effectively enables "mass" or "wholesale" electronic surveillance, and raises greater Fourth Amendment concerns than a single electronically surveilled car trip. This further supports the court's conclusion that cell-phone users maintain a reasonable expectation of privacy in long-term cell-site-location records and that the Government's obtaining these

records constitutes a Fourth Amendment search.

*In the Application of the United States for an Order Authorizing The Release of Historical Cell–Site Information,* 809 F.Supp.2d at 119–20. Similarly, the Western District of Texas has explained that it "will insist on strict adherence to the requirements of Rule 41 on all requests for CSLI, including requests for historical data. The warrants will be granted only on a showing of probable cause...." *In the Application of the United States of America For and [sic] Order: (1) Authorizing the Use of a Pen Register and Trap and Trace Device; (2) Authorizing Release of Subscriber and Other Information; and (3) Authorizing the Disclosure of Location–Based Services,* 727 F.Supp.2d at 583–84.

■ This Court has concluded that given refinements in location technology regarding cell site information that access to such data enables that person to plot with great precision where the cell phone user has been during a given time period. *In the Application of the United States for Historical Cell Site Data,* 747 F.Supp.2d. at 835–37. Consequently, cell site data are protected pursuant to the Fourth Amendment from warrantless searches. *Id.* at 838–40. Thus, the Government could obtain the cell site data only by establishing probable cause pursuant to Rule 41 of the Federal Rules of Criminal Procedure.

On appeal pursuant to 28 U.S.C. § 636, the Court overruled the Government's objections explaining that "[w]hen the government requests records from cellular services, data disclosing the location of the telephone at the time of particular calls may be acquired only by a warrant issued on probable cause." *In the Applications of the United States for Historical Cell Site Data,* Misc. No. H–11–223 (S.D.Tex. Nov. 11, 2011) (Order on Objections) (un-

published) (citing U.S. Const. amend. 4). Moreover, because the requested "records would show the date, time, called number, and location of when the call was made," this information was "constitutionally protected from this intrusion." *Id.* Finally, the Court determined that "[t]he standard under the Stored Communications Act, 18 U.S.C. § 2703(d), is below that required by the Constitution." *Id.*

In the pending application, the federal prosecutor is essentially a court order in support of a very broad and invasive search affecting likely at least hundreds of individuals in violation of the Fourth Amendment. The Constitution mandates that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It further provides that "no Warrants shall issue, but upon probable cause." *Id.; see also* Fed.R.Crim.P. 41 (addressing the issuance of warrants). There is nothing from the Government in its application to support the position that the "specific and articulable facts" standard and § 2703(d) apply to cell tower dumps.

In matters regarding electronic surveillance, the United States Attorney often relies on a governmental publication for guidance. *See* United States Department of Justice, *Electronic Surveillance Manual* (rev. 2005), *available at* www.justice.gov/criminal/foia/docs/elec-sur-manual.pdf. Regarding applications pursuant to § 2703(d), it directs federal prosecutors to make such applications:

> appl[y] to the court for an order, pursuant to § 2703(d), directing (provider of electronic communication service ...) to disclose the (**choose as appropriate:** name, address, local and long distance telephone connection records, or records of session times and durations; length of service [including start date] and type of

service utilized; telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; [and] means and source of payment for such service. *Id.* at 162 (bold in original). The applicant then is to certify "that it is believed that the subjects of the investigation are using the (**choose as appropriate:** telephone or instrument number; other subscriber number or identity . . .) in furtherance of the subject offenses; and that the information sought is relevant and material to an ongoing investigation." *Id.* (bold in original). According to the Department of Justice's own guidance, its attorneys must know the telephone number or other similar identifier such as an ESN, MEIN, MIN, SIM, MSISDN, IMSI, or IMEI to obtain a court order pursuant to § 2703(d). Here, the Assistant United States Attorney acknowledges that he does not have any of these identifiers.

Instead, the Assistant United States Attorney simply relied on an application based on "specific and articulable facts" standard. He has not submitted an affidavit pursuant to Rule 41 of the Federal Rules of Criminal Procedure demonstrating probable cause supporting the request for the records. This Court has concluded that such requests must be made based on the probable cause standard. *See In the Matter of the Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 930 F.Supp.2d at 701–02, 2012 WL 4717778, at *3–4.

In this application, there is no discussion about what the Government intends to do with all of the data related to innocent people who are not the target of the criminal investigation. In one criminal investigation, the Government received the names, cell phone numbers, and subscriber information of 179 innocent individuals. *See United States v. Soto*, No. 3:09CR200 (D.Conn. May 18, 2010) (Memorandum in Support of Motion to Suppress). In another federal prosecution, a cell tower dump resulted in over 150,000 telephone numbers being provided to federal agents. *United States v. Capito*, No. 3:10CR8050 (D.Ariz. Mar. 12, 2010) (Criminal Complaint, at 13). Some of these numbers were also attached to court documents as exhibits.

 Although the use of a court-sanctioned cell tower dump invariably leads to such information being provided to the Government, in order to receive such data, the Government at a minimum should have a protocol to address how to handle this sensitive private information. This failure to address the privacy rights for the Fourth Amendment concerns of these innocent subscribers whose information will be compromised as a request of the cell tower dump is another factor warranting the denial of the application.

## CONCLUSION

Accordingly, the Government's application pursuant to 18 U.S.C. § 2703(d) requesting cell tower records is denied without prejudice.