# NO. 12-12-00107-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHN FLOWERS,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *CITY OF DIBOLL, TEXAS, STEVE*<br>*BAKER AND KENT HAVARD,*<br>*APPELLEES* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

John Flowers appeals from take nothing summary judgments in favor of the City of Diboll, Steve Baker, and Kent Havard, alleging that the trial court improperly granted the motions. We affirm.

## BACKGROUND

John Flowers and Stephanie Cook have a child together. Stephanie Cook has a brother named Steven Cook, and the relationship between Flowers and Steven is not a good one. In 2006, there was litigation regarding child custody arrangements. Flowers's allegations about Steven were part of the litigation, and Flowers was ultimately awarded primary custody of the child.

On May 9, 2006, Flowers was leaving a baseball game with his wife and children when Steven drove his truck alongside Flowers's truck. The two trucks collided and then separated. The police were called, and City of Diboll police officer Steve Baker conducted an investigation. Ultimately, Baker obtained an arrest warrant for Flowers for the misdemeanor offense of deadly conduct. Flowers was arrested, but he was never charged with the offense. Flowers sued Baker, the City of Diboll, and Kent Havard, the chief of police, for false arrest and other torts. The

defendants filed traditional and no evidence motions for summary judgment after discovery. Flowers dismissed his state law claims and elected to proceed solely on his Section 1983 federal civil rights violation cause of action. The trial court granted the defendants' motions for summary judgment, and this appeal followed.

**SUMMARY JUDGMENT**

In three issues, Flowers argues that the trial court erred in granting summary judgment because a fact issue existed as to whether the actions of the officer and of the police chief were reasonable, because the issuance of a warrant did not break a causality chain, and because a fact issue existed as to whether the City was liable for a lack of training.

## Standard of Review

We review the trial court's decision to grant summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). A defendant who moves for a traditional summary judgment has the burden of showing that there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's claims and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979).

A no evidence summary judgment motion under Rule 166a(i) is essentially a motion for a pretrial directed verdict, which may be supported by evidence. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). A party may move for a no evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof. *Martinez v. Hays Constr., Inc.*, 355 S.W.3d 170, 177 (Tex. App.–Houston [1st Dist.] 2011, no pet.). A trial court must grant a no evidence motion for summary judgment unless the nonmovant produces more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX. R. CIV. P. 166a(i); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Less than a

scintilla of evidence exists when the evidence is so weak as to merely create a surmise or suspicion of a fact. *Id*.

Review of a summary judgment under either a traditional standard or no evidence standard requires that the evidence presented by both the motion and the response be viewed in the light most favorable to the party against whom the motion was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding all contrary evidence and inferences unless reasonable jurors could not. *Gish*, 286 S.W.3d at 310; *Wal-Mart Stores, Inc.*, 92 S.W.3d at 506. In reviewing a summary judgment, we consider all grounds ruled on by the trial court and preserved for appellate review that are necessary for final disposition of the appeal. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

## Analysis

Section 1983 provides a cause of action for the deprivation, under color of law, of a citizen's "'rights, privileges, or immunities secured by the Constitution and laws' of the United States[.]" *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S. Ct. 2068, 2082–83, 129 L. Ed. 2d 93 (1994); *see also* 42 U.S.C.A. § 1983 (West 2003). Therefore, to sustain a claim under Section 1983, a plaintiff must show a violation of a right secured by the United States Constitution by a person acting under the color of state law. A Section 1983 claim cannot be premised on a respondeat superior theory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009). However, a municipality may be held to be liable if it is the execution of the government's policy or custom that "inflicts the injury." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989). A supervisor can be held to be liable if he is (1) personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). Additionally, a supervisory official may be liable "even without overt personal participation in the offensive act" if the official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id*.

Governmental employees are entitled to qualified immunity from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct.

3

2727, 2738, 73 L. Ed. 2d 396 (1982). Qualified immunity shields a police officer if a reasonable officer could have believed that the action taken was lawful in light of clearly established law and the information the officer possessed. *See Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991); *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040, 97 L. Ed. 2d 523 (1987); *Tex. Dep't of Pub. Safety v. Rodriguez*, 344 S.W.3d 483, 488 (Tex. App.–Houston [1st Dist.] 2011, no pet.). "To establish an entitlement to qualified immunity, a government official must first show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority." *Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004). "Once a defendant has properly invoked qualified immunity, the burden rests on the plaintiff to show that the defense does not apply." *Id*.; *Thomas v. Collins*, 860 S.W.2d 500, 503 (Tex. App.–Houston [1st Dist.] 1993, writ denied). Summary judgment is proper if a plaintiff fails to show that the conduct of the governmental action violated any clearly-established statutory or constitutional right. *See Leachman v. Dretke*, 261 S.W.3d 297, 315 (Tex. App.–Fort Worth 2008, no pet.).

Describing it as settled law, the Supreme Court held that officers were entitled to immunity for an arrest "if a reasonable officer could have believed that probable cause existed." *Hunter*, 502 U.S. at 229, 112 S. Ct. at 537. That settled law supports the ruling of the trial court in this case. As the court noted, the "qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. Within that wide berth, Baker's investigation revealed sufficient cause for him to make the arrest. Baker had conflicting information at the conclusion of his investigation. Several eyewitnesses believed that Steven Cook had initiated the contact between the two trucks. However, Baker discounted the witnesses' renditions because they were some distance from where the contact between the two trucks began. What was decisive to Baker was a contemporaneous emergency telephone call from Flowers's wife made during the incident. In that phone call, which began before the contact between the two trucks, she said that "John just rammed his truck." This is a slightly ambiguous statement, but it was supplemented by the skid marks left by Flowers's truck. The skid marks began well within Steven's lane of travel, and Baker concluded that this meant Flowers initiated the contact between the two trucks. Taken together with the remainder of his investigation, Baker had a reasonable basis on which to conclude that Flowers had initiated contact and committed an offense. A witness associated with

4

Flowers appeared to state that he had initiated the contact, and the physical evidence–the skid mark beginning in Steven's lane of travel–appeared to corroborate that statement.

Flowers identifies the harm alleged in this case to be a "seizure without probable cause resulting in an unlawful deprivation of liberty under the Fourth Amendment." It is not controversial to state that the Fourth Amendment protects persons from seizure without probable cause. However, Flowers makes the further assertion that because the affidavit used to obtain the warrant to arrest him was deficient, it follows that there was not probable cause for his arrest. We disagree.

The constitutional claim of false arrest requires a showing of no probable cause. *See Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). Probable cause exists when the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *See Club Retro LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citations omitted). We apply an objective standard, which means that we will conclude that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense. *See Devenpeck v. Alford*, 543 U.S. 146, 153–54, 125 S. Ct. 588, 594, 160 L. Ed. 2d 537 (2004).

The difficulty in this case begins and ends with the affidavit filed by the investigating officer, Steve Baker. As we explained, Baker had grounds to conclude that Flowers had committed the offense and to make an arrest. However, he did not communicate those grounds to the magistrate. The affidavit begins with the conclusory statement that Baker "has reason to believe and does believe that [Flowers] committed this offense based on the following facts: Defendant intentionally and knowingly committed the offense of DEADLY CONDUCT – P.C. 22.05 MISD A." In short, Baker swore that he had reason to believe that Flowers committed the offense because Flowers committed the offense.

We are mindful that these kinds of documents are created when an officer fills in blanks on a form and that this may result in stilted language and assertions, like the one above, that are mere tautologies. But the obligation remains to show that probable cause exists to make an arrest, and Baker never does so. Instead, throughout the document he simply repeats that Flowers committed the offense. Each sentence begins with the curious locution, "Affiant will

show that. . . ." Six sentences begin with that promise, but Baker never gives the magistrate any information to consider. For example, Baker writes that he will show that Flowers was operating a vehicle on US Highway 59 and that he will show that Steven Cook was operating his vehicle at the same location. He writes that he will show that Flowers crossed his vehicle over into Steven's lane of travel causing Steven's vehicle to drive onto the median and that his actions were reckless. But Baker never offers the magistrate the basis for his conclusion that the facts he recites are true. *See* TEX. CODE CRIM. PROC. ANN. art. 15.05(2) (West 2005) ("[The complaint] must show that the accused has committed some offense against the laws of the State, either directly or that the affiant has good reason to believe, and does believe, that the accused has committed such offense.").

But it does not follow, necessarily, that Baker lacked probable cause simply because he did not actually write out the basis for his belief that Flowers committed an offense. The necessity of an arrest warrant, especially for a misdemeanor arrest that occurs in public, is a requirement of Texas state law—an arrest warrant is not required by the U.S. Constitution for a misdemeanor arrest. *See **Vasquez v. State***, 739 S.W.2d 37, 44 (Tex. Crim. App. 1987) ("In the context of an arrest, an officer acting with probable cause to arrest may do so without a warrant and not violate the Fourth Amendment.") (citing ***United States v. Watson***, 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976))[1]; ***Fields v. City of South Houston***, 922 F.2d 1183, 1189 (5th Cir. 1991) (despite violation of Texas state law regarding warrantless arrest, "there is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause"); *see also **Virginia v. Moore***, 553 U.S. 164, 173, 128 S. Ct. 1598, 1605, 1605, 170 L. Ed. 2d 559 (2008) (violations of state law are not necessarily violations of Fourth Amendment; warrantless arrest "satisfies the Constitution so long as the officer has probable cause to believe that the suspect has committed or is committing an offense.") (citations and internal quotations omitted); *cf.* TEX. CODE CRIM. PROC. ANN. arts. 14.01 (West 2005), 14.03, 14.031 (West Supp. 2012), 14.04 (West 2005) (limiting warrantless arrest to certain circumstances).

At the hearing on the defendants' summary judgment motion, the issue arose of what result should obtain if the officer had probable cause but did not communicate it in his

---

[1] The U.S. Constitution does require, generally, a warrant for the police to enter a dwelling to make an arrest. *See **Payton v. New York***, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380, 63 L. Ed. 2d 639 (1980); *but see **Cornealius v. State***, 900 S.W.2d 731, 734 (Tex. Crim. App. 1995) (police may politely knock on a door asking for the person to be arrested without a warrant and may make arrest if suspect surrenders).

6

application for an arrest warrant.  Flowers submitted a brief on the issue asserting that Baker was not entitled to qualified immunity because no officer could believe that the affidavit contained an allegation of probable cause.  Flowers cited *Malley v. Briggs*, 475 U.S. 335, 354, 106 S. Ct. 1093, 1098, 90 L. Ed. 2d 271 (1986), for the proposition that "the shield of immunity [will] be lost" when a "warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable."  However, the *Malley* decision can be readily distinguished from this case.  First, the decision specifically did not address the question of whether the officer's "conduct in [that] case was in fact objectively reasonable."  *Id*., 475 U.S. at 346 n.8, 106 S. Ct. at 1098 n.8.  Second, the allegations contained in the warrant application in *Malley* appear to be the sum total of the information available to the police.  That is clearly not the case here, where Baker actually had information that led him to believe, perhaps mistakenly, that Flowers had committed an offense but did not communicate it to the magistrate.

At oral argument, Flowers contended that the determination of probable cause should be limited to the affidavit and cited *Kohler v. Englade*, 470 F.3d 1104 (5th Cir. 2006), in a postsubmission brief, in support of that contention.  In *Kohler*, the court held only the affidavit should be examined to determine if probable cause existed for a search warrant.  *Id*. at 1112. Although it is called a seizure warrant, the court makes clear that the warrant was a "search warrant" for which the police must submit an affidavit "containing facts sufficient to 'provide the magistrate with a substantial basis for determining the existence of probable cause.'"  *Id*. at 1109 (quoting *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).  This is important because, while the Fourth Amendment does not require a warrant as a prerequisite to a public arrest, a search without a warrant is presumptively unreasonable, and therefore unconstitutional, without a warrant.  *See*, *e.g.*, *Kentucky v. King*, __ U.S. __, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011).[2]  Indeed, the *Kohler* case cites *Whiteley v. Warden*, 401 U.S. 560, 564-65, n.8, 91 S. Ct. 1031, 1035 n.8, 28 L. Ed. 2d 306 (1971), for the conclusion that "an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate." However, in analyzing whether the evidence must be suppressed in that case, the Court rejected the State's argument that a lower standard should prevail.  *Id*., 401 U.S. at 568, 91 S. Ct. at 1037. Nevertheless, the court analyzed whether the arresting officer possessed probable cause to make

---

[2] The Court also notes that an arrest in the home requires a warrant.  Flowers  was not arrested in his home.

7

a warrantless arrest independently of the information contained in the application for a warrant. *Id*. The Court concluded that the evidence must be suppressed because the "complaint on which the warrant issued" could not support a finding of probable cause and also because the arresting officer did not possess additional information to corroborate the otherwise inadequate information that formed the basis for the arrest. *Id*. If the only question were whether the warrant was supported by probable cause, the second area of analysis would have been unnecessary and irrelevant.

In this case, because Baker's assessment of probable cause was reasonable, Flowers has not shown that Baker was not entitled to qualified immunity or that the trial court erred in granting summary judgment as to Baker.

With respect to the liability of Havard, the police chief, and the City of Diboll, the trial court properly granted summary judgment. Havard played no part in the arrest of Flowers. The only argument Flowers offered in his response to the motions for summary judgment with regard to the City and to Havard is that there was a lack of training on the "fundamental constitutional issue of probable cause" and that the lack of training is "so pervasive" that Havard recognized that the affidavit was insufficient but had "failed to train" his senior officers. As we discussed in the previous section, an arrest warrant is not required, in most circumstances, by the U.S. Constitution. *See*, *e.g.*, *Vasquez*, 739 S.W.2d at 44. Therefore, even the assertion of a lack of training fails because there was no civil rights violation on what Flowers describes as the "fundamental constitutional issue of probable cause."

To present a valid claim for a violation of Section 1983 by a municipality, a plaintiff must plead facts showing that (1) a policy or custom existed, (2) the governmental policymakers actually or constructively knew of the policy's existence, (3) a constitutional violation occurred, and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996). A plaintiff cannot simply offer a conclusory description of the policy or custom and its relationship to the constitutional violation but must, instead, offer specific facts. *See Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). Furthermore, proof of a single incident generally will not support a finding of inadequate training as a matter of custom or policy. *Forgan v. Howard Cnty*, 494 F.3d 518, 522 (5th Cir. 2007). The core of a lack of training assertion is that the municipality is deliberately indifferent, and this is ordinarily established by a

"pattern of violations and [showing] that the inadequacy of the training and supervision is obvious and obviously likely to result in a constitutional violation." *See **Cousin v. Small***, 325 F.3d 627, 637 (5th Cir. 2003) (citations and internal quotations omitted).

Flowers concedes that he failed to produce "evidence of flawed policies, customs, or traditions." He argues that he should be excused from such a requirement because the City and Havard have no policies. We disagree. There is no showing that the City of Diboll is deliberately indifferent to a constitutional violation committed by its employee. Because there is no evidence that Havard or the City was deliberately indifferent to the possibility of a lawless arrest or that there was a constitutional violation, the trial court properly granted the no evidence summary judgment motion as to defendants Harvard and the City. We overrule Flowers's three issues.

## DISPOSITION

Having overruled Flower's three issues, we ***affirm*** the judgment of the trial court.

### SAM GRIFFITH
Justice

Opinion delivered May 22, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 22, 2013**

**NO. 12-12-00107-CV**

**JOHN FLOWERS,**
Appellant
V.
**CITY OF DIBOLL, TEXAS,**
**STEVE BAKER AND KENT HAVARD,**
Appellees

---

Appeal from the 159th Judicial District Court

of Angelina County, Texas. (Tr.Ct.No. 41,039-07-12

---

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **JOHN FLOWERS**, for which execution may issue, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

10