United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 21, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————

No. 05-30541

————

SHANNON KOHLER,

Plaintiff-Appellant,

versus

PAT ENGLADE; ELMER LITCHFIELD; CHRISTOPHER
JOHNSON; CITY OF BATON ROUGE; PARISH OF EAST
BATON ROUGE,

Defendants-Appellees.

Appeal from the United States District Court
For the Middle District of Louisiana

Before GARZA, DeMOSS, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiff-Appellant Shannon Kohler ("Kohler") appeals from the district court's grant of

summary judgment in favor of Defendants-Appellees Detective Christopher Johnson ("Detective

Johnson"), Baton Rouge Police Chief Pat Englade ("Chief Englade"), and the City of Baton Rouge

(the "City") (collectively, "Defendants") on Kohler's claims for relief under 42 U.S.C. § 1983. The

issue on appeal is whether Kohler's constitutional rights were violated by the seizure of his DNA.

I

This case arises out of a massive law enforcement search for a serial killer who terrorized south Louisiana beginning in 2001. Over the span of a year, three women were brutally raped and murdered in Baton Rouge, Louisiana. From DNA evidence left at the crime scenes, analysts with the Louisiana State Police Crime Lab were able to link all three murders to the same, then-unknown male perpetrator.[1]

As part of the investigation into the serial killer's identity, agents with the Behavioral Analysis Unit (BAU) of the Federal Bureau of Investigation (FBI) created a Criminal Investigative Analysis, or "profile," which identified certain behaviors and personality traits of the perpetrator. In addition to providing a behavioral and psychological analysis of the perpetrator, the profile suggested that the perpetrator would likely be between 25 and 35 years of age, employed in a job that required physical strength, and financially insecure. Based on a bloody footprint left at one of the crime scenes, the profile also indicated that the perpetrator wore a size 10 to 11 shoe.

To coordinate the work being done by the FBI with the efforts of state and local authorities, the City formed the Multi-Agency Homicide Task Force (the "Task Force"). The Task Force, hoping to generate leads on the serial killer's identity, released the FBI profile to the public and established a "tip line," which received over 5,000 tips concerning possible suspects. After analyzing the tips, Task Force investigators contacted more than 600 men, including Kohler, in an effort to collect oral saliva swabs for DNA comparison.

The Task Force received anonymous tips from two different individuals indicating that Kohler was "a possible person who needed to be checked." Detective Johnson and other Task Force

---

[1] Derrick Todd Lee was eventually identified as the serial killer.

investigators conducted a background check and learned that Kohler had been convicted of burglary in 1982. They also learned that Kohler was currently unemployed, was last employed as a welder for a fabrication company headquartered on Old Perkins Road with a secondary shop on Choctaw Drive))the Baton Rouge road where investigators had discovered a cell phone taken from one of the victims. Further, they learned that Kohler had worked for another company located off Choctaw Drive 10 or 11 years earlier. When contacted by Task Force officer D. Hamilton ("Officer Hamilton") and asked to give voluntarily a saliva swab for his DNA, Kohler initially agreed but changed his mind when Officer Hamilton arrived at his home. According to Kohler, Officer Hamilton informed him that the Task Force had received two anonymous tips naming him as a person who should be checked but provided no reason as to why he was a suspect. Aware of media reports that the perpetrator had left a size 10 or 11 footprint at one of the murder scenes, Kohler told Officer Hamilton that he had size 13 feet and was wearing size 14 work boots. Kohler also volunteered that he had received a full pardon for his burglary conviction in 1996 and that investigators could check his work records for his whereabouts on the dates of the three murders. When Kohler continued to refuse Officer Hamilton's requests for a DNA swab, Officer Hamilton stated that if officers had to get a court order for his DNA it would go in the public records and Kohler "could get [his] name in the papers." Despite perceiving this statement to be a threat, Kohler declined to provide a DNA swab.

Shortly thereafter, Detective Johnson contacted Kohler and stated that he was taking over for Officer Hamilton. Detective Johnson again requested that Kohler voluntarily provide a DNA sample. When Kohler refused, Detective Johnson prepared an "Affidavit for Seizure Warrant," which he submitted to Judge Richard Anderson of the Louisiana Nineteenth Judicial District Court for his

signature. Upon being served with the signed warrant by Detective Johnson, Kohler submitted to an oral saliva swab. Detective Johnson then filed the affidavit, the warrant, and the warrant return in the public records of the Clerk of Court for the Nineteenth Judicial District Court. Within a day, Kohler was identified by the media as a suspect in the serial killer investigation who was refusing to cooperate with police. Not until two months later did Kohler learn from a local newspaper that he had been cleared as a suspect because his DNA was not a match to that of the serial killer.

Kohler brought suit against Detective Johnson, Chief Englade, the City, the Parish of East Baton Rouge, and East Baton Rouge Parish Sheriff Elmer Litchfield,[2] asserting that the taking of his DNA violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 5 of the Louisiana Constitution. In his Complaint, Kohler alleged that the affidavit submitted by Detective Johnson to procure the seizure warrant did not provide probable cause to believe that Kohler was the serial killer and concealed from Judge Anderson exculpatory facts, namely, that Kohler was pardoned for his burglary conviction, that he had not worked in the area where the victim's cell phone was found for over a decade, and that he could not have made the bloody footprint left at the crime scene. Accordingly, Kohler sought damages and the expungement of his DNA profile from any place where it had been stored.

Detective Johnson, Chief Englade, and the City moved for summary judgment on the grounds that: (1) Detective Johnson did not violate Kohler's constitutional rights because he acted pursuant to a seizure warrant and the information he omitted from the warrant affidavit was not material to a

---

[2] The East Baton Rouge Parish filed a motion to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6), which Kohler did not oppose, and Kohler subsequently informed the district court that he did not wish to proceed against Sheriff Litchfield.

finding of probable cause;[3] (2) Chief Englade could not be held liable under § 1983 because he was not personally involved in obtaining the seizure warrant and there was no causal connection between his acts and any constitutional violation; and (3) the City could not be held liable under § 1983 because there was no evidence linking the alleged constitutional violation to any policy, practice, or custom of the City. Kohler responded that the warrant affidavit did not set forth probable cause to believe he was the serial killer and was so deficient that no reasonable officer would have submitted it to a magistrate; that the warrant affidavit omitted key facts; and that Chief Englade could be held liable for the constitutional violation because he failed to supervise Detective Johnson.

The district court found that the facts within Detective Johnson's knowledge, including the FBI profile, were sufficient to support a finding of probable cause. The court further found that even if the warrant affidavit had included the omitted facts, there was still probable cause sufficient to obtain a warrant for Kohler's DNA. With respect to Kohler's claims against Chief Englade and the City, the court found that there was no evidence that the alleged constitutional violation was caused by any conduct on the part of Chief Englade or any policy or custom of the City. Accordingly, the court granted Defendants' motion for summary judgment and dismissed all of Kohler's claims. Kohler then filed a motion for a new trial or an amendment of the judgment pursuant to Federal Rule of Civil Procedure 59, which the district court denied.

II

We review the district court's grant of summary judgment *de novo*, applying the same legal standard as the district court. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir.

---

[3] Significantly, Detective Johnson did not move for summary judgment on qualified immunity grounds. Accordingly, the defense of qualified immunity is not an issue on appeal.

2003). Summary judgment is proper when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

A

To prevail on a § 1983 claim, a plaintiff must establish the deprivation of rights secured by the Constitution or laws of the United States by a person acting under the color of state law. *See Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004).

1

Kohler first asserts that Detective Johnson violated his rights under the Fourth and Fourteenth Amendments by submitting to Judge Anderson an affidavit for a seizure warrant lacking in probable cause.[4] A police officer seeking the issuance of a search warrant must present an affidavit containing facts sufficient to "provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Probable cause exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime. *Id.* at 238-39. The officer's supporting affidavit must make it apparent, therefore, that there is some nexus between the items to be seized and the criminal activity

---

[4] It is undisputed that the collection of a saliva sample for DNA analysis is a search implicating the Fourth Amendment. *See Groceman v U.S. Dep't of Justice*, 354 F.3d 411, 413 (5th Cir. 2004) ("The extraction of blood from a prisoner to collect a DNA sample implicates Fourth Amendment rights.") (citing *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989) (holding that blood tests, breathalyzer tests, and the taking of urine samples constitute searches under the Fourth Amendment)); *see also Padgett v. Donald*, 401 F.3d 1273, 1277 (11th Cir. 2005) ("The Commissioner does not dispute that the statutorily required extraction of saliva for DNA profiling constitutes a 'search' within the meaning of the [Fourth] Amendment."); *Schlicher v. (NFN) Peters, I & I*, 103 F.3d 940, 942-43 (10th Cir. 1996) ("It is agreed that the collection, analysis and storage of blood and saliva . . . is a search and seizure within the meaning of the Fourth Amendment.").

being investigated.  *See Warden v. Hayden*, 387 U.S. 294, 302, 307, 87 S. Ct. 1642, 18 L. Ed. 2d

782 (1967).  Although we accord great deference to a magistrate's determination of probable cause,

we will not "defer to a warrant based on an affidavit that does not 'provide the magistrate with a

substantial basis for determining the existence of probable cause.'" *United States v. Leon*, 468 U.S.

897, 914-15, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) (quoting *Gates*, 462 U.S. at 239).  Whether

the facts set forth in Detective Johnson's warrant affidavit provided probable cause for the seizure

warrant is a question of law that we review *de novo*.  *See United States v. Runyan*, 290 F.3d 223,

236-37 (5th Cir. 2002); *Blackwell v. Barton*, 34 F.3d 298, 305 (5th Cir. 1995).

Judge Anderson issued the seizure warrant based solely on Detective Johnson's affidavit,

which reads in its entirety as follows:

> Affiant says that he has probable cause to believe the above-listed thing to be seized [Kohler's DNA] is relevant evidence based upon the following facts:
>
> On 09/23/01, Ms. Gina Green was murdered in her home at 2151 Stanford Ave.  On 05/31/02, Ms. Charlotte Pace was murdered in her home at 1211 Sharlo Ave.  On 07/12/02, Mrs. Pamela Kinamore was abducted from her home at 8338 Briarwood Place.  Her body was later found in a wooded area near the Whiskey Bay exit from Interstate 10.  All three deaths were determined to be homicides with some sexual assault involved as well.  Items taken from Gina Green's residence by the perpetrator were found behind the Ready-Portion Meat Company in the 1500 block of Choctaw Dr.  The investigations into the three murders yielded evidence left at the crime scenes from which LSP Crime Lab technicians were able to obtain the suspect's DNA profiles.  The LSP Crime Lab technicians further determined that the DNA profiles from the three different crime scenes belonged to the same unknown male suspect.
>
> Following this finding, a multi-agency task force was formed and a "tip-line" was set up to handle the multitude of callers with information.  To this date, more than 5,000 "tips" have been received by the task force investigators suggesting investigators "check out" various white males for various reasons.  Many of these tips are anonymous out of the callers' concerns about reprisals.  More than 600 white males have been contacted for the purpose of obtaining oral saliva swabs for DNA comparison.  Out of that number, less than 15 have refused the voluntary submittal,

the overwhelming majority being more than eager to be formally eliminated from suspicion.

Two "tips" were received from different persons regarding the subject Kohler as a possible person who needed to be checked. Background investigation of Kohler revealed that he is a convicted felon)) from a burglary charge in 1982. He was last employed as a welder for a fabrication company headquartered on Old Perkins Rd. and with another shop on Choctaw Dr., and he was occasionally sent out of town on contracted work. Kohler was contacted on two occasions in October by an investigator with the task force. He told this investigator that he was currently unemployed. When asked to consent to a voluntary saliva swab, Kohler requested time to think it over. Two weeks later, when contacted again by the investigator, he flatly refused to voluntarily provide a saliva swab. The investigator contacted Kohler a few weeks later by phone and asked again if Kohler would provide a swab. He refused.

Kohler argues that the affidavit did not provide probable cause to believe that his DNA was relevant evidence of the serial killings but rather was an affidavit of only "possible cause."

In determining whether Detective Johnson's affidavit provided probable cause for a warrant to seize Kohler's DNA, we begin with the fact that officers first learned of Kohler through two anonymous tips. An anonymous tip, standing alone, is rarely sufficient to provide probable cause for a warrant. *See Gates*, 462 U.S. at 227. The anonymous tips in this case are no exception. There is no indication in the warrant affidavit as to the identity of the tipsters, their credibility, or, most importantly, their reasons for believing that Kohler "was a possible person who needed to be checked" in the serial killer investigation. *Id.*; *see also Florida v. J.L.*, 529 U.S. 266, 270-72, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000) (finding an anonymous tip insufficient to support an investigatory stop where the caller neither gave the basis for his belief that the man he identified would be carrying a gun, nor provided any predictive information through which officers could test the caller's knowledge or credibility).

Nor does the affidavit reveal that the tips were corroborated in some way that supplied

probable cause for Kohler's DNA. *Compare J.L.*, 529 U.S. at 272 (explaining that the fact that officers located a young black male wearing a plaid shirt at a particular bus stop was insufficient to corroborate an anonymous tip that "a young black male standing at a particular bus stop and wearing a plaid shirt *was carrying a gun*" because it did not show that the tip was reliable in its assertion of criminal activity) (emphasis added), *with Gates*, 462 U.S. at 242-46 (finding that probable cause existed where the anonymous tip contained specific, predictive information, which officers were able to corroborate through investigation and which provided a fair probability that the tipster's information was reliable). Although the affidavit contains additional information that officers learned about Kohler through investigation))that Kohler had a twenty-year old burglary conviction, was currently unemployed, had previously worked for a company that had a secondary shop on the road where an item belonging to one of the victims was found, and was one of only fifteen people who refused voluntarily to provide their DNA to investigators))these facts did not establish a fair probability that Kohler was the serial killer. Neither the twenty-year old burglary conviction nor Kohler's employment status would lead a prudent person to believe that Kohler was responsible for three rape-murders. "While the use of prior arrests and convictions can be helpful in establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover," *Greenstreet v. County of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir. 1994), burglary is not a crime of the same general nature as rape or murder, and Detective Johnson's affidavit provides no explanation as to how Kohler's twenty-year old burglary conviction gives rise to a fair probability that he was the serial killer. Likewise, the affidavit contains no information explaining the relevance of Kohler's employment status to the rape-murders. Finally, the fact that Kohler had worked for a company with a shop on

the road where officers discovered a cell phone belonging to one of the victims does not link Kohler to the serial killings, given that the affidavit provides no indication that Kohler ever worked at the Choctaw Drive shop or that the shop was located anywhere near the 1500 block of Choctaw Drive, where the victim's cell phone was found. Even when considered in their totality, the circumstances set forth in the affidavit failed to provide a nexus between Kohler's DNA and the serial killings.

Detective Johnson does not dispute that the warrant affidavit, by itself, was insufficient to establish probable cause.[5] Instead, he argues that the information set forth in the affidavit, when considered in conjunction with the characteristics identified in the FBI profile, provided probable cause for the seizure warrant. Because the FBI profile was not provided to Judge Anderson, however, this argument is without merit. What Detective Johnson knew but failed to tell Judge Anderson is irrelevant to the question of whether Detective Johnson's affidavit provided Judge Anderson with a substantial basis for determining the existence of probable cause. *See Whiteley v. Warden*, 401 U.S. 560, 564-65, n.8, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971) ("[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate.").[6]

Even if the FBI profile could be considered, the fact that Kohler may have possessed two of the numerous traits set forth in the FBI profile)) employment in a job that required physical strength

_____

[5] Indeed, his counsel conceded as much during oral argument.

[6] *See also Mills v. City of Barbourville*, 389 F.3d 568, 576 (6th Cir. 2004) ("Although the officers claim that they took Cox in a car and he identified 801 North Allison Avenue as the residence from where he purchased the drugs, there is no indication that this knowledge was passed on to the magistrate. The officers' independent knowledge, without some explanation in the affidavit, is insufficient to allow the magistrate to find probable cause that drugs would be found at 801 North Allison Avenue."); *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 277 (4th Cir. 2004) ("Our review of whether the search warrant was supported by probable cause)) in other words, a review of the facts upon which the issuing magistrate relied)) may not go beyond the information actually presented to the magistrate during the warrant application process.").

and financial insecurity due to unemployment)) adds little, if anything, to the probable cause analysis in this case. These two traits are so generalized in nature that hundreds, if not thousands, of men in the Baton Rouge area could have possessed them, and they are, therefore, insufficient to warrant the belief that Kohler was the serial killer. *Cf. United States v. Jones*, 619 F.2d 494, 497-98 (5th Cir. 1980) (finding no probable cause for the arrest of a defendant who was stopped based solely on the fact that he matched a physical description of a man who was suspected of having robbed a gas station where the description was very general and could have fit many people). Indeed, the FBI profile expressly cautions that "[i]t is important to note that no one or two traits or characteristics should be considered in isolation or given more weight than others" because "[a]ny one of the traits, or several, can be seen in people who have never committed a crime." Moreover, the cases in which profile factors have been used to support a finding of probable cause have involved a greater correlation between the profile and the suspect and far more specific evidence linking the suspect to the crime being investigated.[7] Accordingly, we conclude that the district court erred in finding that

---

[7] *Cf. Cervantes v. Jones*, 188 F.3d 805, 811-14 (7th Cir. 1999) (probable cause for prosecution existed where the FBI profile "depicted the probable assailant in terms that [we]re strikingly descriptive of" the murder suspect; the victim had previously complained to friends that the suspect had beaten her; and the suspect had a key to the victim's apartment, fought with her a few days before the murder, had intended to visit her the night of the murder, had an uncorroborated alibi for the time of the murder, and failed a polygraph test), *overruled on other grounds*, *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001); *Simmons v. Poe*, 47 F.3d 1370, 1373-75, 1378-79 (4th Cir. 1995) (probable cause existed for rape suspect's DNA where, in addition to matching many of the traits set forth in the behavioral profile, the suspect had cleaned the victim's windows weeks before the crime and, hence, had opportunity to unlock the window through which the perpetrator entered the victim's home; fit the physical description of the attacker given by the victim and had a New Jersey accent that fit the victim's description of the attacker as having a "mild," "Northern" voice; and knew the victim resided alone and was familiar with the layout of her home); *Simkunas v. Tardi*, 930 F.2d 1287, 191-92 (7th Cir. 1991) (probable cause for warrantless arrest existed where the suspect, in addition to fitting the FBI profile of the offender in that he knew the victim and appeared at her grave site on the one-year anniversary of her death, was identified in a line-up as a person who closely resembled the man seen looking for the victim on the day of the murder; owned and wore a jacket similar to the one an eyewitness described the offender as having worn; had no alibi for his whereabouts at the time of the murder; was emotionally distraught the day after the murder; and had access to wires similar to those used in the murder).

the seizure warrant was supported by probable cause.[8]

2

Kohler also contends that Detective Johnson violated his Fourth Amendment rights by omitting exculpatory information from the warrant affidavit, thereby precluding review by a neutral magistrate of all the facts material to the existence of probable cause. Pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), a Fourth Amendment violation may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application. Likewise, the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation. *See Hale v. Fish*, 899 F.2d 390, 400 n.3 (5th Cir. 1990).

Kohler complains that Detective Johnson omitted from the warrant affidavit three exculpatory facts: that Kohler received a pardon for his burglary conviction, that he had not worked in the area where the victim's cell phone was found for over a decade, and that he could not have made the bloody, size 10-11 footprint left at the crime scene because he had size 13 feet.[9] To determine whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts ordinarily insert the omitted facts into the affidavit and ask whether the reconstructed affidavit

---

[8] Because Detective Johnson did not assert qualified immunity in his motion for summary judgment, we do not consider whether a reasonably well-trained officer in Detective Johnson's position would have known that the affidavit he submitted to procure the seizure warrant failed to establish probable cause. *See Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) (holding that an officer who submits an arrest warrant application lacking in probable cause is not entitled to qualified immunity if "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable").

[9] Detective Johnson contends that these facts were not material to the probable cause determination because they did not, in his mind, exclude Kohler as a suspect in the serial killings. The issue is not, however, whether the omitted facts were material to Detective Johnson's determination of probable cause; rather, the issue is whether the omitted facts were material to Judge Anderson's determination of probable cause. *See Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) ("[A] police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence.").

-12-

would still support a finding of probable cause. *See, e.g.*, *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980). This materiality analysis presumes that the warrant affidavit, on its face, supports a finding of probable cause. In cases such as this one, however, where the warrant affidavit is already lacking in probable cause, any reconstructed affidavit that includes the omitted exculpatory information would necessarily lack probable cause as well, regardless of the materiality of the omitted information. This result appears to dictate one of two competing conclusions: either that a prerequisite for a *Franks* violation is a warrant affidavit that appears to establish probable cause on its face; or that the usual test for materiality is simply not helpful to determining whether an officer's omissions amounted to a constitutional violation when the warrant affidavit is facially insufficient, and the materiality test should therefore be modified to encompass such claims.

We recognize that the former conclusion is, in essence, a conclusion that a plaintiff cannot hold an officer liable under *Franks* for intentionally omitting important exculpatory information from a warrant affidavit when the officer has also committed a *Malley* violation by presenting a facially deficient warrant affidavit to the issuing judge. We further recognize that the latter conclusion is not necessarily inconsistent with *Franks*, which protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the issuing judge in making the probable cause determination. Nonetheless, it is clear that *Franks* itself was confined to providing a mechanism for challenging a search warrant that was not supported by probable cause but that, due to the inclusion of deliberately falsified allegations in the warrant affidavit, appeared to be supported by probable cause. The principles of *Franks* have never been applied to facially invalid warrants, and we decline to so extend *Franks* today. Because we have found that there was insufficient evidence to establish probable cause on the face of Detective Johnson's warrant affidavit, we conclude that

-13-

*Franks* is inapplicable. Accordingly, the district court did not err in granting summary judgment to Detective Johnson on Kohler's *Franks* claim.

3

Finally, Kohler asserts that Detective Johnson violated his constitutional right to privacy by filing the warrant affidavit, the seizure warrant, and the return in the public records. Because Kohler asserted this theory for the first time in a Federal Rule of Civil Procedure 59(e) motion and did so only vaguely and without citation to any authority, he did not properly raise the argument in the district court. *See Trust Co. Bank v. U.S. Gypsum Co.*, 950 F.2d 1144, 1152, n. 16 (5th Cir. 1992) (finding claim raised for the first time in a Rule 59(e) motion waived on appeal); *see also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) ("An argument must be raised 'to such a degree that the district court has an opportunity to rule on it.'"). Nor did Kohler adequately brief the issue in this Court, given that, *inter alia*, he failed to cite any legal authority for the proposition that one has a constitutional right to have an executed search warrant filed under seal. *See L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994) (finding an issue not adequately briefed where no authorities were cited in a one page argument); FED. R. APP. P. 28(a)(9)(A) (stating that the appellant's brief must contain his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). Accordingly, we deem the argument waived.[10]

B

---

[10] To the extent Kohler also premises his § 1983 claims against Chief Englade and the City on Detective Johnson's filing of the search warrant documents in the public records, the claims are similarly waived.

-14-

Kohler's claims against Chief Englade and the City are based on Detective Johnson's conduct in obtaining the seizure warrant. The district court found that summary judgment was appropriate on these claims because, *inter alia*, Kohler produced no evidence that any act on the part of Chief Englade or any policy or custom on the part of the City caused the violation of Kohler's constitutional rights.

Section 1983 does not impose individual liability on a police chief under theories of vicarious or *respondeat superior* liability. *See Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006); *Lozano v. Smith*, 718 F.2d 756, 768-69 (5th Cir. 1983). Rather, a plaintiff must show either that the police chief was personally involved in the constitutional violation or that there is a sufficient causal connection between the police chief's conduct and the constitutional violation. *Id.* The uncontroverted summary judgment evidence in this case is that Chief Englade was not personally involved in the investigation of Kohler or the procurement or execution of the seizure warrant for Kohler's DNA. Although Kohler argued that Chief Englade failed to supervise Detective Englade, he provided no evidence in support of such a claim. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (explaining that supervisory liability under § 1983 requires proof that the supervisor failed to supervise the officer involved; that there is a causal connection between the alleged failure to supervise and the constitutional violation; and that the failure to supervise constituted deliberate indifference to the plaintiff's constitutional rights). Accordingly, the district court did not err in granting summary judgment to Chief Englade.

In order to hold a municipality liable under § 1983 for the misconduct of one of its employees, a plaintiff must allege that the municipality caused the constitutional violation through its policies or customs. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56

L. Ed. 2d 611 (1978); *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). Upon reviewing the summary judgment record, we agree with the district court that Kohler has failed to identify any policy, practice, or custom on the part of the City that could be causally related to Detective Johnson's deficient warrant application. We therefore conclude that the district court's grant of summary judgment in favor of the City was proper.

III

For the foregoing reasons, we vacate the district court's grant of summary judgment on Kohler's claim that Detective Johnson submitted to Judge Anderson a warrant affidavit lacking in probable cause; affirm the grant of summary judgment on Kohler's claim that Detective Johnson submitted to Judge Anderson a warrant affidavit containing material omissions and on Kohler's claims against Chief Englade and the City; and remand for further proceedings not inconsistent with this opinion.

VACATED IN PART, AFFIRMED IN PART, AND REMANDED IN PART.