# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30169
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
January 23, 2017

Lyle W. Cayce
Clerk

ANNA D. DAVIS,

Plaintiff–Appellant,

v.

JACK STRAIN, in his official capacity as Sheriff of St. Tammany Parish;
KATHERINE DOMANGUE, St. Tammany Parish Sheriff Deputy; RICK
RICHARD; JOHN MORSE, Sergeant,

Defendants–Appellees.

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:14-CV-1086

Before REAVLEY, OWEN, and ELROD, Circuit Judges.

PER CURIAM:*

Dr. Anna Davis (Dr. Davis) brought this suit under 42 U.S.C. § 1983
against Jack Strain, John Morse, Katherine Domangue, and Rick Richard
(collectively, the officers), alleging both federal and state law claims of false
arrest in violation of her Fourth Amendment rights. The officers asserted the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 16-30169

defense of qualified immunity, and Strain and Morse moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. After granting Strain and Morse's motion, the district court granted summary judgment in favor of the nonmovant–defendants, Domangue and Richard, pursuant to Rule 56(f)(1). Dr. Davis timely appealed, asserting that Morse and Domangue "omitted critical information from the application for the arrest warrant" that would have "fatally undermined" the finding of probable cause.[1] We affirm.

## I

This court reviews a district court's grant of summary judgment de novo.[2] "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."[3] Although qualified immunity is "nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised."[4] When the court considers the validity of a qualified immunity claim on summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor."[5]

---

[1] Davis does not mention either Strain or Richard in her argument before this court, referring to them only in the summary of proceedings. Any claims as to Strain and Richard are therefore waived for inadequate briefing. *See* FED. R. APP. P. 28(a)(8)(A) (stating that a brief must contain "appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies").

[2] *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009); *see also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (per curiam); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).

[3] *Hart*, 343 F.3d at 764 (citing FED. R. CIV. P. 56(c)).

[4] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[5] *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

No. 16-30169

An official asserting the defense of qualified immunity must "show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority."[6]  Once the officer pleads his good faith, the burden shifts to the plaintiff to "rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law."[7]  "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[8]  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[9]  This "demanding standard"[10] protects "all but the plainly incompetent or those who knowingly violate the law."[11]

The Fourth Amendment guarantees "the right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . and no warrants shall issue, but upon probable cause."[12]  It is undisputed that this right is clearly established.[13]  In the context of a false arrest claim, an officer is entitled to qualified immunity if "a reasonable person in [his or her] position could have believed [he or she] had probable cause to arrest."[14]  Though generally an arrest made pursuant to a properly issued warrant "is simply not

---

[6] *Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004).

[7] *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

[8] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[9] *Id.* (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

[10] *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

[11] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[12] U.S. CONST. amend. IV.

[13] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009).

[14] *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (internal quotation marks omitted) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).

a false arrest,"[15] "when an affidavit contains inaccurate statements which materially affect its showing of probable cause, any warrant based upon it is rendered invalid."[16]  The Supreme Court has recognized that an applicant for a warrant may violate the Fourth Amendment if he includes "a false statement knowingly and intentionally, or with reckless disregard for the truth" *and* "the allegedly false statement is necessary to the finding of probable cause."[17]  Thus, "where the officers charged with false arrest were responsible for securing the warrant, we are required to test the validity of that warrant."[18]

We note that "[p]robable cause to arrest exists if, at the moment an arrest is made, the facts and circumstances within the arresting officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the suspect has committed or is committing an offense," but "[e]nough evidence to support a conviction is not required."[19]   "[S]ubjective intent, motive, or even outright animus are irrelevant,"[20]  and we confine our inquiry to an objective assessment of whether "a reasonable officer could have believed [the arrest at issue] to be lawful, in light of clearly established law and the information the [arresting] officers possessed."[21]   "[I]f even under [the plaintiff's] factual scenario the officers' actions may be deemed as a matter of law objectively reasonable[,] . . . qualified immunity should be granted."[22]   "To determine

---

[15] *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982).

[16] *United States v. Morris*, 477 F.2d 657, 662 (5th Cir. 1973).

[17] *Franks v. Delaware*, 98 S. Ct. 2674, 2676 (1978) (setting forth the standard to obtain a hearing); *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006) (noting that a Fourth Amendment violation may exist where the *Franks* standard is satisfied).

[18] *Mendenhall v. Riser*, 213 F.3d 226, 232 (5th Cir. 2000).

[19] *Morris*, 477 F.2d at 663.

[20] *Mendenhall*, 213 F.3d at 231.

[21] *Id.* at 230 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

[22] *Id.*; *cf. Morris*, 477 F.2d at 662-63 (stating that, if the erroneous statement were removed from the affidavit, it would "contain[] nothing more than a recitation of entirely

whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts ordinarily insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause."[23]

## II

The actual sequence of events is contested by the parties. However, for purposes of a qualified immunity analysis, we cabin our review of the facts to the information the officers had *at the time of the arrest*.[24] In this case, the officers received information from Dr. Rachel Murphy that a patient came to her for a pre-employment drug screen on January 23, 2013. She informed them that, upon learning he had failed the drug screen, the patient and his father met with Dr. Murphy. According to Dr. Murphy, the patient left the office, subsequently returned, and presented a prescription for valium dated January 21, 2013. Dr. Murphy believed the prescription was fraudulent. The patient did not have a matching prescription in his prescription history between January 21 and January 23, 2013.

The officers obtained a search warrant for Dr. Murphy's office, where they obtained the prescription bottle, which indicated Dr. Davis provided the prescription. Dr. Murphy also stated that the pharmacist who had filled the prescription had initially told her it was filled on January 21, 2013, but later said he had backdated the fill date. According to Dr. Murphy, the patient's father had reported driving the patient to Dr. Davis's office just before the patient presented her with the valium prescription.

---

innocent acts coupled with the bare assertion that a crime was being committed" and thus could not support the issuance of an arrest warrant).

[23] *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006).

[24] *See Mendenhall*, 213 F.3d at 231 (explaining that "[t]he law charges us with determining the reasonableness of the actions taken in light of the cause that existed *at the time of arrest*").

No. 16-30169

The officers obtained a statement from the patient that, upon learning of the failed drug test, he had requested a back-dated prescription from Dr. Davis, which he received.     He stated that he subsequently filled the prescription without incident, though this statement was later controverted by the pharmacist.     Pursuant to a search warrant, the officers obtained the prescription from the pharmacy where it was filled.     There, the pharmacist who dispensed the medication also informed the officers that the prescription numbers issue in order, and that the number on the prescription indicated it was actually filled on January 31, 2013.     The officers obtained a search warrant for Dr. Davis's office and records, which revealed two signed entries for January 21.  The two entries appeared to be written in different pens, and only the second referenced the valium prescription.  The detectives also spoke with Dr. Davis regarding the January 21, 2013 entries and the valium prescription. Dr. Davis denied backdating any prescription, though she did acknowledge that the patient had made such a request at some time.     Dr. Davis did see the patient on January 31, 2013, but there was no mention of a valium prescription on that date.  The officers secured a warrant for Dr. Davis's arrest based on this information.[25]     The application for the warrant did not mention the patient's criminal history or drug abuse, nor did it mention any possible "deal" with the patient.

The crux of Dr. Davis's argument is that the officers omitted two pieces of critical information from the affidavit and included false information concerning the timeline of events.     The affidavit made no mention of the

---

[25] The officers took a recorded statement from Dr. Murphy on the same afternoon that the warrant application was submitted and took a statement from the pharmacist five days later.  It is unclear whether the officers obtained Dr. Murphy's statement before Dr. Davis was informed of the issuance of the warrant.  In an abundance of caution, any information that may have been obtained after Dr. Davis was notified of the warrant and surrendered is not considered by this court.

extensive criminal history of the patient who obtained the allegedly backdated prescription, including multiple convictions for crimes involving illegal drugs and deception. Nor did the affidavit mention the existence of an agreement not to prosecute the patient in exchange for his cooperation in the investigation. Finally, Dr. Davis argues that the affidavit misrepresents Dr. Murphy's account of when the patient presented the allegedly backdated prescription. Dr. Davis argues that Dr. Murphy's statement from May 15, 2013 contradicts the information in the arrest warrant by stating that the patient only visited her office once on January 31, 2013. Dr. Davis asserts that, were the affidavit rewritten to include the omitted information and her version of events, there would be no probable cause. We disagree.

Taking into account all the evidence available at summary judgment, and resolving all contested facts in favor of Dr. Davis, we cannot say that the allegedly false statements and omissions were necessary to the finding of probable cause.[26] This is not a case in which the only information supporting the arrest was provided by a discredited witness.[27] The officers received information from at least two other individuals whose credibility has not been challenged, including Dr. Murphy and the pharmacist. Furthermore, the officers executed search warrants and independently verified many of the facts provided to them. Discounting all evidence provided by the patient, and assuming Dr. Murphy said the patient visited only once, the following facts support a finding of probable cause:

---

[26] *See Franks v. Delaware*, 98 S. Ct. 2674, 2676 (1978).

[27] *Cf. United States v. Hall*, 113 F. 3d 157, 160-61 (9th Cir. 1997) (affirming the lower court's conclusion that no probable cause existed to search a trailer based solely on the "word of a man whom [the government] knew had a substantial criminal record, including a conviction for making a false report to police," when information about the witnesses credibility had been intentionally or recklessly withheld by the state trooper seeking the warrant).

No. 16-30169

- Dr. Murphy advised a patient that he had failed a drug screen performed on January 23, 2013, and the patient produced what Dr. Murphy believed to be a fraudulent prescription dated January 21, 2013.
- The prescription history of the patient did not show a prescription for the drug in question during the relevant time period.
- The pharmacist who filled the prescription admitted he had backdated the prescription's fill date to January 21, 2013, even though the receipt transaction date stated the prescription was purchased on January 31, 2013.
- The patient's father told Dr. Murphy that the patient had obtained the backdated prescription from Dr. Davis after learning he had failed the drug screen, and before presenting the prescription to Dr. Murphy, in an attempt to justify the failed drug screen.
- Dr. Davis's "progress note" for the patient from January 21, 2013 includes two signed entries, each written in different pen, and both signed by Dr. Davis.  The second entry contained information regarding the prescription at issue.

We reiterate that "[e]nough evidence to support a conviction is not required" to establish probable cause.[28]   Even though Dr. Davis was not ultimately found guilty of the offense, the information available to the officers at the time of arrest, discounting that contested by Dr. Davis, was sufficient to support a finding of probable cause.

*     *     *

The judgment of the district court is AFFIRMED.

---

[28] *United States v. Morris*, 477 F.2d 657, 663 (5th Cir. 1973).