# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 9, 2020

Lyle W. Cayce
Clerk

No. 19-20607
Summary Calendar

Jasma McCullough,

*Plaintiff—Appellant*,

*versus*

James Wright, Police Officer, Houston Police Department, being sued in his individual capacity; Hector Pizana, Police Officer, Houston Police Department, being sued in his individual capacity; City of Houston,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2629

Before Stewart, Higginson, and Costa, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-20607

*Pro se* plaintiff-appellant Jasma McCullough brought suit against Officers James Wright and Hector Pizana, and the City of Houston pursuant to 42 U.S.C. § 1983 for an alleged Fourth Amendment violation when they searched her wallet in order to identify her while she was stalled out on a major highway. The district court granted summary judgment in favor of the defendants. For the reasons provided below, we AFFIRM.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Houston's "SafeClear" Program began in 2005 and is now "part of the Houston-Galveston Area Council's regional traffic management plan" under a new name, "Tow and Go."[1] Section 8-127 of the City of Houston's Code of Ordinances codifies the SafeClear program. Specifically, subsection (3) explains that the towing of a stalled vehicle from a freeway is considered a non-consent tow. *See* Hous. Code of Ordinances § 8-127(3). Subsection (5) goes on to explain

> that the tow operator shall tow a stalled vehicle located on a shoulder to a safe place off the freeway within one mile from the nearest freeway exit at the rate prescribed and subject to

---

[1]    City of Houston, Texas, "Tow and Go," *available at* https://www.houstontx.gov/towandgo/index.html (last accessed June 20, 2020). The program tows stalled vehicles "at no cost [to the motorist], to a safe location within one mile of [the] breakdown." This no-cost tow service includes towing vehicles that have failed due to "mechanical failure (i.e., out of gas, overheating, flat tire) while traveling in a main lane of the freeway, on the shoulder, ramp, or in the High Occupancy Vehicle (HOV) High Occupancy Toll (HOT) lanes of freeways in the Tow and Go service area." Under the program, a motorist's "vehicle can [also] be towed to a nearby storage lot, where it will be stored at no cost for up to 48 hours;" storage fees will accrue after those 48 hours expire. However, if a motorist wants her vehicle towed beyond the no-cost drop location, she "may arrange for the Tow and Go operator . . . to move [her] vehicle, but [she is] responsible for related charges." However, the program's website notes that "[T]he tollways and the Katy Freeway HOT lanes are not included."

the conditions established in the agreement, provided, however, that if the vehicle owner is unable to pay the tow operator at the time of service, such vehicle shall be towed to the nearest licensed storage facility that is lighted and manned on a 24-hour basis, provides telephone and other access to the vehicle owner, and will not charge any storage-related fees for the first 48 hours[.]

*Id.* § 8-127(5).

On August 12, 2017, appellant Jasma McCullough's car ran out of gas under the 610 overpass on I-10, the Katy Freeway. When the car eventually stopped, she called 9-1-1 and told them that her car was two lanes from the shoulder and that she had four children in her backseat and specifically requested a "mobility response" officer to block off the lanes for her and her children's safety. Prior to calling 9-1-1, McCullough called her sister to bring her a gas can filled with gas so that she could drive the car to a nearby gas station. While waiting for her sister and law enforcement, a tow truck operator stopped and said he would charge her $80 to tow her to a storage facility. She politely declined the offer and explained that her sister was on the way with gas—the tow operator said he could not help her and continued on. Then, a second tow operator arrived, this operator being a member tow operator of the SafeClear program. He explained to McCullough that he had "full authority" to tow her car and that law enforcement officers would let him once they arrived on the scene. That tow operator offered a tow charge of $65 to which McCullough refused for the same reason. Upon her refusal, the SafeClear operator went back into his truck and began backing up to latch his truck to her car, while her children were in the car. To prevent him from doing so, McCullough stood in front of her car, all while traffic flowed on the freeway. Then, the Houston Police Department officers arrived.

Officers James Wright and Hector Pizana arrived to the scene and told her that her car would be towed in accordance with the city's

"SafeClear" program. Upon being told this, the officers allege that McCullough continued to stand between her car and the wrecker, and apparently, became irate in the process. McCullough argues that while she did stand in front of the car, she was not irate. She avers that she refused the tow because she repeatedly told the officers that she could not afford it and that her sister was not far away, bringing her a gas can, and that the wrecker tried to tow the car while the children were still inside. McCullough's sister then arrived at the scene while this exchange between McCullough and the officers was occurring. The officers dispute that McCullough's sister brought gas to the scene. At some point, Officer Wright asked McCullough for her identification and she refused to provide it. She claims that she was then arrested by Officer Wright on Officer Pizana's order and placed in the back of Wright's police car. Officer Wright then went back to her car, found her purse, and located her identification inside of her wallet. About six minutes later, her children were removed from her car and placed in the backseat of her sister's car. She was ultimately arrested for and charged with interfering with public duties. She was placed on a 24-hour homicide arrest hold which prevented her ability to post bail. McCullough says that the Harris County criminal court rejected those charges in a probable cause hearing.[2]

Following that alleged hearing, McCullough sued the officers in their individual capacities and the City of Houston pursuant to 42 U.S.C. § 1983 for unlawful arrest, unlawful search of her wallet, and malicious prosecution in violation of her Fourth and Fourteenth Amendment rights. The appellees first moved to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6)—the district court denied it and *sua sponte* granted McCullough the opportunity to amend

---

[2] The record is silent as to any reference to such a probable cause hearing.

her complaint. After filing an amended complaint, the appellees again filed a 12(b)(6) motion to dismiss which was followed by their motions for summary judgment a few months later, contending that they are entitled to qualified immunity on McCullough's unlawful arrest claims and that the City is not subject to *Monell* liability under § 1983. The district court granted those motions for summary judgment. The officers then filed another motion for summary judgment on McCullough's unlawful search claim which was followed by McCullough's cross-motion for summary judgment, contending that the officers violated her rights for arresting her without probable cause and searching her car and purse without justification. The district court denied McCullough's summary judgment motion and granted the officers' and the City's summary judgment motions. The district court also held that Officer Wright's search of McCullough's wallet was limited to the purpose of identifying her. McCullough appeals that decision.

## II.   DISCUSSION

A grant of summary judgment, and any interpretations of state law therein, are reviewed de novo. *McGruder v. Will*, 204 F.3d 220, 222 (5th Cir. 2000). The court must look beyond the pleadings and accept evidence favorable to the non-movant as true to determine if there is a genuine issue of material fact. Fed. R. Civ. P. 56(a); *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018). "A 'material' fact is one 'that might affect the outcome of the suit under governing law,' and a fact issue is '"genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Renwick*, 901 F.3d at 611 (internal citations omitted). This court may affirm the district court's grant of summary judgment for any reason supported by the record. *McGruder*, 204 F.3d at 222.

**A. Officers Wright and Pizana are entitled to qualified immunity because McCullough has failed to show that it is clearly established that a limited**

**search for the sole purpose of procuring identification violates the Fourth Amendment**

When properly applied, qualified immunity protects all officials "but the plainly incompetent or those who knowingly violate the law" and holds "public officials accountable when they exercise power irresponsibly." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When invoked, the plaintiff must show that (1) a constitutional violation (2) was (a) objectively unreasonable (b) under clearly established law. *McClendon v. City of Columbia*, 305 F.3d 314, 322–23 (5th Cir. 2002) (en banc) ("Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions."). It is the plaintiff's responsibility to show that the defendant is not entitled to qualified immunity. *See id.* at 323.

McCullough's arrest may be justified if the officers can show probable cause for any crime. *Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020). "Probable cause exists when an officer is aware of 'reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe' that a crime has been or will be committed." *Id.* at 238–39 (quoting *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006)). So, Officers Wright and Pizana are otherwise entitled to qualified immunity unless probable cause to arrest McCullough was lacking. *Id.* But, an officer can receive the benefit of qualified immunity even if probable cause was absent if a reasonable person in the officer's position would have believed his or her conduct was constitutional in light of clearly established law. *Id.* at 239 (citing *Freeman v. Gore*, 483 F.3d 404, 415 (5th Cir. 2007)) (internal quotations omitted).

Regarding the arrest, McCullough argues that it violated the Fourth Amendment because it was not her intent to become stranded on the freeway or to stay on the freeway longer than necessary and the officers did not provide any evidence demonstrating how she physically interfered with their public duties, beyond standing in front of her car. She says that it was the officers' decision to prolong the situation because they refused to allow her to put gas in her car and also declined to ask the tow operator to move her car off of the freeway for free. McCullough asserts that "merely arguing with the officers about the propriety of their conduct, including about whether they have the legal authority to conduct a search" does not meet the threshold for interference with public duties. In turn, she argues that her conduct falls under the speech exception to the State's public interference law. We disagree.

In our recent decision in *Voss v. Goode*, we explained the contours of Texas's interference with public duties statute:

> Texas Penal Code § 38.15 provides, "[a] person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." *Id.* § 38.15(a)(1). In order to violate the statute, a person's interference must consist of more than speech alone. *Id.* § 38.15(d) ("It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only."). Accordingly, we have held that "merely arguing with police officers about the propriety of their conduct . . . falls within the speech exception to section 38.15" and thus does not constitute probable cause to arrest someone for interference. *Freeman*, 483 F.3d at 414; *see also Westfall v. Luna*, 903 F.3d 534, 544 (5th Cir. 2018). By contrast, actions such as "ma[king] physical contact with any of the officers or physically obstruct[ing]" them from performing their legally

authorized duties could constitute interference. *Freeman*, 483 F.3d at 414. And "fail[ing] to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech" can also constitute interference. *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (describing the state of the law as of September 2013).

*Id.* at 239.

The officers argue that they not only had probable cause to arrest under the State's public interference statute, but also under Texas Penal Code § 42.03. The statute says that a person commits a Class B misdemeanor if "without legal privilege or authority, [s]he intentionally, knowingly, or recklessly: (1) obstructs a highway . . . to which the public . . . has access, or any other place used for the passage of . . . vehicles . . . regardless of the means of creating the obstruction and whether the obstruction arises from [her] acts alone or from [her] acts and the acts of others." TEX. PEN. CODE § 42.03(a)(1). Per the statute, "'obstruct' means to render impassable or to render passage unreasonably inconvenient or hazardous." *Id.* § 42.03(b).

In *Voss*, though Voss did not physically interfere with the officer's commands, we held that her conduct amounted to public interference when she told her daughter to get into her car instead of the police officer's car, after the police officer told her daughter to get into his cruiser. *Id.* at 239–40. However, McCullough points us to *Carney v. State* where the Texas Court of Appeals held that the defendant's arguing with police officers about the constitutionality of a search fell within the state's public interference statute's speech exception. 31 S. W. 3d 392, 396, 398 (Tex. App. 2000). In *Carney*, the officers never specifically testified that the defendant was blocking their entry way into the house—they only asserted that his argument with them about their authority to enter and search his home formed the probable cause to arrest him for interference with public duties. *Id.* at 398. In

our 2007 *Freeman v. Gore* decision, we noted that probable cause to arrest for interference with public duties was lacking because "[a]lthough Freeman was, in the district court's words, "yelling" and "screaming," that alone does not take her conduct out of the realm of speech, and . . . there is nothing to indicate that her conduct involved anything other than speech or that she physically obstructed the deputies in any way." 483 F.3d at 414.

Here, the officers say that they "repeatedly asked her to allow the tow truck driver to remove her car from the middle of a busy interstate highway" and that she continually "refused to heed their requests and obey their instructions." The officers' request for her to allow the tow truck driver to remove her car from the highway was an instruction pertaining to physical conduct. *See Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (holding that Childers' conduct did not fall within the public interference statute's speech exception because he did more than argue with the officer by refusing to comply with the officer's instruction related to moving the truck out of the way). The only way the wrecker could latch onto McCullough's car was if she physically moved out of its path and removed her children from the car. Her refusal to do so thereby created a large-scale, public safety hazard for herself, her children, the tow operator, the officers, and the public-at-large who were also travelling along the Katy Freeway. Thus, we hold that the officers are entitled to qualified immunity because probable cause for McCullough's arrest under § 38.15 existed at the time of her arrest. *See Childers*, 848 F.3d at 415.

As to the officer's search of McCullough's car to retrieve her wallet, she contends that search violated the Fourth Amendment under *Arizona v. Gant*, 556 U.S. 332 (2009) (holding that a search incident to a lawful arrest is one conducted "as long as the administrative processes incident to the arrest and custody have not been completed."); *see also United States v. Curtis*, 635 F.3d 704, 712 (5th Cir. 2011). However, searches that are incident to lawful

arrest are those of: the arrestee's person; any items or containers that were located on the arrestee's person at the time of the arrest; and any items or containers that were located within the arrestee's reaching distance at the time of the arrest. *Curtis*, 635 at 711–12. "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Gant*, 556 U.S. at 339.

The officers argue that the district court did not err in granting summary judgment on the search of her wallet because it qualifies as a search incident to a lawful arrest. The district court agreed and noted, "it is objectively reasonable for an officer to search an arrestee's wallet to determine her identity" and cited two cases in doing so. In the first, *Brown v. City of New Orleans*, No. CV 16-17080, 2017 WL 897875, at *1 (E.D. La. Mar. 7, 2017), *aff'd sub nom.*, 692 F. App'x 206 (5th Cir. 2017) (unpublished), Brown's wallet was removed from his person, along with a firearm. The officer was deemed to have lawfully searched Brown's wallet for identification after he had already been arrested and placed in the back of a police vehicle. *Id.* at *6. In the second, *Emesowum v. Cruz*, Emesowum's wallet was located on his person and searched during the course of a *Terry* stop and frisk, which are presumptively valid. 756 F. App'x 374, 381 n.3 (5th Cir. 2018); *e.g.*, *United States v. Brown*, 366 F.3d 456, 461 (7th Cir. 2004) ("[A]n officer may check an individual's identification in his wallet during a *Terry* stop."). But, on the search of his car, the district court held, and we affirmed, that the search of Emesowum's car was not valid because it was "obvious that no reasonable officer could conclude that the totality of the circumstances . . . gave rise to probable cause to believe the car contained evidence of a crime." *Id.* at 380. Accordingly, the officers in that case were not entitled to qualified immunity for the search of Emesowum's car. *Id.* at 380–81.

Here, the car and wallet searches were conducted only for the limited purpose of identifying McCullough after she persistently refused to identify herself. As the district court observed, the wallet search only took place after McCullough was arrested for interference with public duties. Though the wallet was beyond her reach at the time, the officers did not have another way to determine her identity since she refused to identify herself. McCullough has failed to show that it is clearly established that a limited search for the sole purpose of procuring identification, after an uncooperative arrestee refuses numerous requests to identify herself, violates the Fourth Amendment. Accordingly, we affirm the district court's holding that the officer's search of McCullough's wallet was objectively reasonable under the circumstances and that the officers are entitled to qualified immunity on this claim. *See McClendon*, 305 F.3d at 322–23.

## B. The City of Houston is not liable under *Monell*

McCullough complains that the SafeClear program, a policy established by the City of Houston—the policymaker—was the moving force behind the officers' decision to arrest her and search her wallet for identification as a result of the City's failure to properly train its officers. We disagree.

To find a municipality liable under § 1983, a plaintiff must establish that (1) a policymaker (2) promulgates a policy or custom (3) that is the "moving force" of a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001)). The policy must be either

unconstitutional or "adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Id.* (internal quotation marks omitted).

Failure to train may represent a policy for which the city may be held liable only if it directly causes injury. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). The fact that an officer could be "unsatisfactorily trained" is not enough to trigger the municipality's liability. *Id.* at 390–91. The plaintiff must show that (1) the training policy was deficient, (2) the County was deliberately indifferent to this deficiency in adopting the policy, and (3) the deficient training policy directly caused the constitutional violation. *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018).

McCullough has failed to demonstrate how the City's SafeClear ordinance is at all related to the officer's effectuation of a lawful search and seizure under the Fourth Amendment. Moreover, the ordinance regulates tow operators that have undergone a commercial agreement with the Houston Police Department under the SafeClear program. *See* Hous. Code of Ordinances §§ 8-126, 8-127. Accordingly, she has not demonstrated such a relationship between the complained-of police conduct and SafeClear ordinance such that the ordinance was the "moving force" behind the search of her car and wallet. Thus, we affirm the district court's denial of McCullough's failure to train claim.

## C. The officers are entitled to official immunity from McCullough's malicious prosecution claims

> Texas recognizes an "official immunity" defense to state law claims such as malicious prosecution. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). State actors are entitled to official immunity from state law liability for "(1) the performance of discretionary duties (2) that are within the scope of the employees' authority, (3) provided that the employee acts in good faith." *Telthorster v. Tennell*, 92 S. W. 3d

457, 460–61 (Tex. 2002); *see also DeWitt v. Harris Cty.*, 904 S. W. 2d 650, 652 (Tex. 1995). "Texas law of official immunity is substantially the same as federal qualified immunity." *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997); *see also Hart v. O'Brien*, 127 F.3d 424, 452 (5th Cir. 1997) (holding that where officers "reasonably believed they had probable cause to proceed against [the plaintiff]," as determined in the federal qualified immunity analysis, the plaintiff "cannot assert a claim for malicious prosecution" under Texas law).

*Crostley v. Lamar Cty.*, 717 F.3d 410, 424 (5th Cir. 2013).

Finally, regarding McCullough's malicious prosecution claims, the officers are entitled to official immunity because they reasonably believed, and the record shows, that they had probable cause to arrest her for interference with public duties under Texas Penal Code § 38.15 and obstruction of a public highway under Texas Penal Code § 42.03. *See Eisenbach v. Zatzkin*, 728 Fed. App'x 307, 311–12 (5th Cir. 2018) (unpublished). Likewise, because the searches of McCullough's car and wallet were objectively reasonable under the circumstances, the officers are entitled to official immunity.

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM.